557 F.2d 227
 PUBLIC SERVICE COMPANY OF NEW MEXICO, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
City of Gallup, New Mexico, Intervenor.
CITY OF GALLUP, NEW MEXICO, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
Public Service Company of New Mexico, Intervenor.
 Nos. 75-1692, 76-1013.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted May 17, 1976.
Decided June 16, 1977.
 
 Paul H. Keck, Washington, D. C. (John E. Holtzinger, Jr., C. Stephen Angle of Morgan, Lewis & Bockius, Washington, D. C., and William B. Keleher, Richard B. Cole of Keleher & McLeod, Albuquerque, N. M., on the brief), for petitioner and intervenor, Public Service Co. of N. M.
 Charles F. Wheatley, Jr., Washington, D. C. (Grace Powers Monaco, Woodrow D. Wollesen of Wheatley & Miller, Washington, D. C., on the brief), for petitioner and intervenor, City of Gallup, N. M.
 Philip R. Telleen, Atty., Washington, D. C. (Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel and Allan Abbot Tuttle, Sol., Washington, D. C., on the brief), for respondent, Federal Power Commission.
 Before SETH and HOLLOWAY, Circuit Judges, and STANLEY, Senior District Judge.*
 HOLLOWAY, Circuit Judge.
 
 
 1
 In these consolidated cases petitioners Public Service Company of New Mexico (PNM), an electric utility regulated under the Federal Power Act, 16 U.S.C. § 791a et seq. (1970), and the City of Gallup, New Mexico (Gallup), seek review of two Federal Power Commission orders with respect to a change in rate sought by PNM for electricity sold to Gallup.
 
 
 2
 Gallup is a wholesale purchaser of electricity which it uses and also distributes to customers. The electric power is purchased by Gallup under a contract made with PNM in 1962 for a 25 year term and amended in 1968 to run for 25 years from that date. It contained provisions for payment at a monthly rate based on a "Monthly Demand Charge" plus a "Monthly Energy Charge," inter alia, with provisions for fuel cost and tax adjustments. In addition to these provisions containing references to specific rates, Articles II and XII included other provisions relating to changes in rates which are at the center of this controversy.
 
 
 3
 Article II contained a paragraph entitled "Change in Rate" which included an option for Gallup to terminate the agreement within 90 days after being given notice of a rate increase " . . . should the rates charged herein to the Consumer by the Company be increased for any reason whatsoever other than fuel cost or tax adjustments . . ." Article XII stated that the contract, including the tariff made a part thereof, was subject to "such changes or modifications as shall be ordered from time to time by any legally constituted regulatory body having jurisdiction to require such changes or modifications."
 
 
 4
 In 1975, PNM filed with the Federal Power Commission a unilateral increase in the rates to be charged to Gallup, pursuant to § 205 of the Federal Power Act, 16 U.S.C. § 824d (1970). Gallup protested and moved that the Commission reject the filing as violative of an existing fixed rate contract. The Commission found that the agreement did not permit such a unilateral filing. However, the Commission did institute proceedings to determine a just and reasonable rate pursuant to § 206 of the Act, 16 U.S.C. § 824e (1970), stating that materials contained in the original PNM filing would form the basis of those proceedings.[1]
 
 
 5
 In No. 75-1692, PNM contends that the Commission erred in holding that the contract barred PNM's unilateral rate increase filing while Gallup agrees with that part of the Commission's decision.
 
 
 6
 However, Gallup contends in No. 76-1013 that the Commission erred in stating that the heavy Sierra-Mobile[2] burden of proof for relief from an unreasonably low and unlawful rate would not apply in the § 206(a) proceeding instituted by the Commission.[3] The Commission argues that this court has no jurisdiction of Gallup's petition. It says that Gallup is not "aggrieved" within the meaning of § 313(b) of the Federal Power Act, 16 U.S.C. § 825l (b) (1970), since no change in the rates to Gallup has been ordered. Further the Commission and PNM contend that the Commission is right in saying that the heavier Sierra-Mobile standard of proof required to set aside a contract rate does not apply because the PNM/Gallup contract, unlike those involved in Mobile and Sierra, is not a fixed rate contract.
 
 
 7
 The primary guidelines for our consideration of these petitions are the Supreme Court's opinions in the Sierra and Mobile cases and their sequel, United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153. We need not recount their familiar principles in detail. It suffices to note the summary in Richmond Power & Light v. FPC, 156 U.S.App.D.C. 315, 481 F.2d 490, 493, 497, cert. denied, 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 472:
 
 
 8
 The rule of Sierra, Mobile and Memphis is refreshingly simple: The contract between the parties governs the legality of the filing. Rate filings consistent with contractual obligations are valid; rate filings inconsistent with contractual obligations are invalid.
 
 
 9
 . . . These principles apply whether the parties agree to a specific rate or whether they agree to a rate changeable in a specific manner. In either case the contract is binding, and a unilateral filing is ineffective to change it . . .
 
 
 10
 * PNM's Petition for Review
 
 
 11
 * PNM argues vigorously for its right to file a unilateral increase in rates on the basis of the following "Change in Rate" provision which appears in Article II of the contract (J.A. 2, 13)[4]:
 
 Change in Rate :
 
 12
 Not withstanding the earliest effective date of termination (July 1, 1977) as set forth in Article II (Term) above, should the rates charged herein to the Consumer by the Company be increased for any reason whatsoever other than fuel cost or tax adjustments provided for herein, then and in that event, the Consumer shall immediately have the option within ninety (90) days after the Consumer is given notice of such rate increase to terminate this agreement ; provided, however, that the Company will supply for a two (2) year period thereafter such power and energy in accordance with the new or increased rates as may be requested by Consumer from time to time up to the amount specified in Article IV hereof. The consumer may exercise this option by giving the Company written notice of such termination and paying the Company the sum of One Hundred Dollars ($100) by good and sufficient check of the Consumer. Such notice and payment shall be given by the Consumer by mailing such notice and payment to the Company by certified mail addressed to the Company at its offices in Albuquerque, New Mexico. Such notice shall have incorporated therein a true copy of the resolution duly adopted at a regular meeting of the City Council authorizing such notice and payment, and the notice shall be executed by the Mayor and sealed and attested by the City Clerk. (Emphasis added).
 
 
 13
 PNM's position is that the language emphasized above can only be read as giving PNM the right to file a unilateral rate change. PNM's brief argues that since the paragraph gives Gallup an opportunity to terminate the contract "should (PNM) change its rates 'for any reason whatsoever,' "[5] it is apparent that the contract gives PNM the right to change the rates unilaterally. Brief of Petitioner, PNM, 6.[6]
 
 
 14
 When confronted with PNM's arguments the Commission said (J.A. 121; see also J.A. 146):
 
 
 15
 We do not think that this language goes to the Mobile-Sierra issue of whether the contract permits the selling public utility to unilaterally file for an increase in rates, but rather provides an option to the customer if the rates charged to it are increased for any reason.
 
 
 16
 We must agree with the Commission's conclusion. Although the "Change in Rate" paragraph does recognize that a change in rates may occur, it does not say how such a change may be effected.[7] Nonetheless, PNM offers several arguments in support of its position.
 
 
 17
 First, PNM asserts that if this paragraph did not contemplate a unilateral rate change by PNM, Gallup's option to terminate would be meaningless. In response to this contention the Commission noted that the option could be exercised when a § 206 proceeding (to determine a just and reasonable rate) resulted in a rate increase. PNM replies that a customer does not need the option when it has the opportunity to participate in a § 206 hearing on a just and reasonable rate. We agree with the Commission that there is nothing illogical about a customer's desire to retain an option to terminate after a § 206 proceeding, especially if the customer's position is not accepted by the Commission and the customer is then faced with increased rates.
 
 
 18
 Second, PNM argues that the "notice of such rate increase" language in the "Change in Rate" paragraph can only have reference to § 205 unilateral filing procedures which are instituted by notice. The Commission thought that the phrase did not refer to § 205, but rather was used "in the ordinary meaning of notice under contract law". J.A. 149. We agree with the Commission that the tenor of Article II is such that the word "notice" seems to be used in the more general sense.
 
 
 19
 PNM further argues that even if the term "notice" was intended to be used in this way, the duty to give notice implies a power to act unilaterally. However, this argument assumes that the notice of a change in rate is to be given by PNM, an assumption unsupported by the contract language.[8] The notice referred to in the "Change in Rate" paragraph could just as well be notice from the Commission that the rate has been increased after a § 206 hearing. Thus the notice clause does not single out a party to give notice or indicate a particular change in rate procedure.
 
 
 20
 In support of its proposition that Gallup's option to terminate in the face of increased rates implies the countervailing right of PNM to file unilateral rate increases, PNM cites two orders of the Commission in Arkansas-Missouri Power Co., Doc. No. E-9094.[9] We are persuaded, however, that the Commission has logically distinguished the contract before us from that involved in the Arkansas-Missouri case. The contractual language there was broader, as the Commission says, and evinced an intent to permit unilateral filings under § 205, an intent not shown by Articles II and XII of the PNM/Gallup contract.
 
 
 21
 In sum, we agree with the Commission that the "Change in Rate" paragraph in the contract did not give or imply a right in PNM to make the unilateral rate filing.
 
 B
 
 22
 PNM also claims a right to unilaterally file an increased rate on the basis of Article XII of the contract.[10] PNM says that this part of the agreement should be construed in light of the procedures of the New Mexico Public Service Commission because it is a verbatim copy of a tariff provision required by the New Mexico Commission for companies subject to its jurisdiction. PNM claims that New Mexico law permits unilateral filings and that, therefore, PNM had the right under this contract.[11]
 
 
 23
 We are not persuaded. State law and procedure are relevant only to the extent intended by the parties. Appalachian Power Co. v. FPC, 174 U.S.App.D.C. 100, 529 F.2d 342, 347 n. 35, cert. denied, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76. We are convinced that an intent to incorporate state law is not manifested by Article XII. Compare Richmond Power & Light Co. v. FPC, supra, 156 U.S.App.D.C. 315, 481 F.2d at 499-500. Thus it is unnecessary for us to examine New Mexico law in deciding whether PNM reserved a right to make unilateral rate filings.C
 
 
 24
 One major argument by PNM in support of its claim of a right to make unilateral rate filings remains. PNM says that provisions like Article XII relating to changes in rate by "orders" (see note 11, supra ), as construed in Central Telephone & Utilities Corp., Western Power Division, 50 F.P.C. 1105 (1973), are consistent with an interpretation that the contract provides for § 205 unilateral filings by PNM which may then be made effective by Commission orders.
 
 
 25
 We must agree that the Central Telephone decision, 50 F.P.C. at 1110, supports PNM's position. However, in its order denying rehearing in the instant case the Commission responded that the Central Telephone language was contrary to that of the Supreme Court in Mobile, that it was dictum, and that more recent Commission decisions have interpreted the term "order" in the same manner as it was construed here. We need go no further than the first point. We agree that the language of Mobile supports the Commission's position in this case which was stated as follows (J.A. 122):
 
 
 26
 . . . We think that the key language in the clause at issue is that the rate shall be subject to change by order issued by the regulatory body having jurisdiction, which is this Commission. In the Mobile case, the Court stated in reference to Section 4(d) of the Natural Gas Act, which is equivalent to Section 205(d) of the Federal Power Act:
 
 
 27
 Section 4(d) provides not for the filing of 'proposals' but for notice to the Commission of any 'change . . . made by' a natural gas company, and the change is effected, if at all, not by an order of the Commission but solely by virtue of the natural gas company's own action. Mobile, supra, (350 U.S.) at 342 (76 S.Ct. 373) (emphasis supplied)
 
 
 28
 Since the parties provided for a change in rate only by order issued by the Commission, it is clear they did not contemplate the unilateral filings permitted by Section 205.
 
 
 29
 In the final analysis, the question is whether the contract reserved to PNM the right to increase the specified rates by a unilateral filing. See Memphis, supra, 358 U.S. at 114, 79 S.Ct. 194. We find no such reservation in the Article XII provision on contract modification by regulatory orders. Indeed the reference therein to changes ordered by a regulatory body ". . . having jurisdiction to require such changes . . ." (emphasis added), points toward a change after a § 206 proceeding, not a § 205 unilateral filing. We feel the parties would not have left the reservation of an important right such as the making of unilateral rate changes to implication from provisions like those of Article XII, or of Article II, but would have clearly provided for such filings if they had been intended.
 
 II
 Gallup's Petition for Review
 
 30
 In No. 76-1013, Gallup argues that the Commission erred in holding that PNM would not have to satisfy the heavy Sierra-Mobile burden of proof in the § 206 proceeding instituted by the Commission. The Commission contends that this court lacks jurisdiction of Gallup's petition because Gallup is not presently "aggrieved" within the meaning of § 313(b) of the Federal Power Act, 16 U.S.C. § 825l (b) (1970), since there has been no change in the rates that Gallup must pay for wholesale electric service. The Commission further says that the earliest point at which Gallup could be aggrieved would be after the conclusion of the § 206 proceeding. Hence the Commission suggests that Gallup's petition is premature and should be dismissed without prejudice. We agree.
 
 
 31
 Section 313(b) of the Act, 16 U.S.C. § 825l (b) (1970), provides in part:
 
 
 32
 Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in United States Court of Appeals . . . .
 
 
 33
 This provision does not authorize review of orders of a procedural or interlocutory nature, but rather relates to "orders of a definitive character dealing with the merits of a proceeding before the Commission". FPC v. Metropolitan Edison Co., 304 U.S. 375, 384-85, 58 S.Ct. 963, 967, 82 L.Ed. 1408; Amerada Petroleum Corp. v. FPC, 285 F.2d 737, 739 (10th Cir.). The requirement that a reviewable order be "definitive" is something more than a requirement that it be unambiguous in legal effect. Atlanta Gas Light Co. v. FPC, 476 F.2d 142, 147 (5th Cir.). It is a requirement that the order have some substantial effect on the parties which cannot be altered by subsequent administrative action. Id. To be reviewable the order must have an impact upon rights and be of such a nature that it will cause irreparable injury if not challenged. Amerada Petroleum Corp., supra,285 F.2d at 739.
 
 
 34
 We are not persuaded that Gallup has shown that it is "aggrieved." The Commission's orders with respect to Gallup were preliminary in that they merely initiated the § 206 proceeding and were procedural insofar as they defined the burden of proof for that proceeding. The contract rates between PNM and Gallup were not modified and, in fact, until they are modified there can be no real injury to Gallup.[12] See Amerada Petroleum Corp., supra, 285 F.2d at 740. Further, Gallup's claim that the ongoing § 206 proceeding could be a "nullity" if the wrong burden of proof is used, thus causing the parties wasted time and resources, is insufficient to show aggrievement. Colorado Interstate Gas Co. v. FPC, 370 F.2d 777, 781 (10th Cir.); see Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51-52, 58 S.Ct. 459, 82 L.Ed. 638.
 
 
 35
 Accordingly in No. 75-1692, the orders of the Commission are affirmed. In No. 76-1013, the petition of Gallup is dismissed without prejudice.
 
 
 
 *
 Of the District of Kansas, sitting by designation
 
 
 [1]
 The orders challenged were entered in Docket No. E-9454, Public Service Company of New Mexico. On July 31, 1975, the Commission's original ruling was made rejecting PNM's unilateral filing and instituting proceedings to determine a just and reasonable rate. On September 26, 1975, the second order under attack was issued, denying rehearing and further discussing the issues
 PNM filed its petition for review of the two Commission orders in this court. On the same day, Gallup petitioned United States Court of Appeals for the District of Columbia Circuit for review of the same Commission orders. PNM petitioned to intervene in that case and moved its transfer to this Circuit. PNM's petition to intervene was granted. The District of Columbia Circuit transferred Gallup's petition for review to this Court pursuant to 28 U.S.C. § 2112(a) (1970), citing Abourezk v. FPC, 168 U.S.App.D.C. 246, 513 F.2d 504, 505. This Court then consolidated the cases.
 
 
 [2]
 See United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373; and Federal Power Commission v. Sierra Pacific Power Co., 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388
 
 
 [3]
 The Commission stated that it would institute a § 206(a) proceeding and set the just and reasonable rate for PNM's service to Gallup and that the proceeding "would not entail meeting the heavy burden of proof associated with the Mobile-Sierra decisions."
 In Sierra the Court held that although a contract for a fixed term at a fixed rate was involved so that a unilateral filing could not effect a change in rate, under the Federal Power Act the Commission could have a hearing to determine "whether the rate is so low as to adversely affect the public interest as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory." 350 U.S. at 355, 76 S.Ct. at 372.
 
 
 [4]
 Our references to the record will be made by citing the Joint Appendix as "J.A."
 
 
 [5]
 We note that the contract does not contain wording that directly supports PNM's statement that the contract "provides Gallup with an opportunity to terminate the contract should the company (PNM) change its rates 'for any reason whatsoever.' " Brief of Petitioner, PNM, 6. (Emphasis added). Article II stipulates that ". . . should the rates charged herein to the Consumer (Gallup) by the Company (PNM) be increased for any reason whatsoever other than fuel cost or tax adjustments . . . ," then Gallup has the termination option. (J.A. 2) (Emphasis added)
 
 
 [6]
 A broader interpretation of the contract language in the change in rate paragraph of Article II is also made by PNM in its reply brief, p. 16:
 In summary, Article II of the PNM/Gallup contract evidences a contractual contemplation of rate change powers both in the regulatory agency which oversees the contract and by the unilateral action of the seller under the contract . . .
 
 
 [7]
 Article II as a whole deals with the term of the contract and with two options to terminate the first for any or no reason upon 24 (amended to 48) months' notice under the title "Term" but no earlier than December 31, 1967 (amended to July 1, 1977), and the second only upon a change in rates after three months' notice under the title "Change in Rate"
 
 
 [8]
 It is worth noting that Gallup's duty to give notice on termination of the contract under either paragraph two or paragraph three of Article II is spelled out in detail. See J.A. 2-3, 12-13
 
 
 [9]
 The Commission language mainly relied on in Arkansas-Missouri appeared in an order of November 29, 1974, stating in part:
 . . . It seems highly unlikely that the parties would have contemplated only mutually agreed upon amendments (rate changes) to the contract on the one hand, and provided for an option to cancel in the event of such a change on the other.
 The second order relied on by PNM was the order of January 29, 1975, denying rehearing.
 
 
 [10]
 Amended paragraph one of Article XII reads as follows (J.A. 22):
 This contract, including the tariff made a part hereof, shall at all times be subject to such changes or modifications as shall be ordered from time to time by any legally constituted regulatory body having jurisdiction to require such changes or modifications.
 As originally drawn, Article XII contained a proviso that the agreement was subject to changes or modifications by the New Mexico Public Service Commission.
 
 
 [11]
 PNM states that the provision is prescribed by Section 24 of the New Mexico Commission's Tariff Schedule Rules, promulgated by First Revised General Order No. 2, effective December 15, 1965. The above cited order is not a part of our record. However, Gallup and the Commission do not contest this point, although they do not concede the conclusion drawn from it by PNM to the effect that state law was incorporated by the parties
 
 
 [12]
 Gallup states that the Commission's orders were based on the premise that the City was an "aggrieved" party since the Commission accepted and granted the City's petition for intervention. We are not bound by the Commission's order granting petitioner's motion to intervene. Utility User's League v. FPC, 394 F.2d 16, 19 (7th Cir.), cert. denied, 393 U.S. 953, 89 S.Ct. 377, 21 L.Ed.2d 365. Rather, this court is obligated to determine for itself whether it has jurisdiction. Phillips Petroleum Co. v. FPC, 475 F.2d 842, 845 (10th Cir.), cert. denied, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102