**LOUISIANA POWER & LIGHT COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 77–3452.

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1979.

Rehearing and Rehearing En Banc Denied Feb. 5, 1979.

Monroe & Lemann, Andrew P. Carter, New Orleans, La., Reid & Priest, James K. Mitchell, Richard M. Merriman, Washington, D.C., for petitioner.

James E. Rogers, Jr., Atty., Kenneth F. Plumb, Secretary, FERC, Howard E. Shapiro, Sol., Robert R. Nordhaus, Gen. Counsel, FERC, Philip R. Telleen, FERC, Washington, D.C., for respondent.

Wallace E. Brand, Edward E. Hall, for cities of Winnfield et al., Dale M. Brown, Washington, D.C.

John Schwab, Baton Rouge, La., for Cajun Elec. Power Coop., Inc.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

Louisiana Power & Light Company (LP&L) petitions to review orders of the Federal Energy Regulatory Commission [1] (Commission) rejecting LP&L's filing, pursuant to section 205 of the Federal Power Act (Act), 16 U.S.C. § 824d,[2] of increased

---

1. LP&L made its original filing in this matter with the Federal Power Commission (F.P.C.). However, on October 1, 1977, pursuant to the Department of Energy Organization Act (D.O.E. Act), Public Law 95–91, 91 Stat. 565 (August 4, 1977) and Executive Order No. 12009, 42 Fed.Reg. 46267 (September 13, 1977), the F.P.C. ceased to exist and its regulatory functions were transferred to the Federal Energy Regulatory Commission (F.E.R.C.), an independent agency within the Department of Energy that was activated on October 1, 1977. Under the D.O.E. Act rate proceedings pending before the F.P.C. on that date were continued and subsequent actions have been taken by the F.E.R.C. Here, "Commission" will be used to describe both agencies.

2. Section 205 provides in pertinent part that

    (a) All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

    .      .      .      .

    (c) Under such rules and regulations as the Commission may prescribe, every public utility shall file with the Commission, within such time and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

    (d) Unless the Commission otherwise orders, no change shall be made by any public utility in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

    (e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint or upon its own initiative without complaint, at once and, if it so orders, without answer or formal pleading by

rates for wholesale electric service provided under various rate schedules to intervenors, the Cities of Winnfield, Vidalia and Jonesville, Louisiana (Cities) and the Cajun Electric Power Cooperative (Cajun).[3] LP&L challenges the Commission's finding that the company's contracts with the Cities and Cajun for wholesale electricity do not permit a "unilateral filing pursuant to Section 205 of the Act." After reviewing the contract language in dispute, we agree with the Commission's interpretation and therefore affirm its orders.

LP&L filed with the Commission on July 29, 1977 increased charges for wholesale electricity delivered under three separate rate schedules with the Cities and four schedules governing service to Cajun.[4] As required by section 205, the company issued a "notice of proposed tariff change" regarding these contracts on August 9. The Cities responded on August 16, filing a protest and petition to reject LP&L's section 205 filing and in the alternative to suspend the

effectiveness of the company's filing for the maximum statutory period, along with a petition to intervene. In urging rejection of the section 205 unilateral rate filing, the Cities asserted that their contracts with LP&L provided for fixed rates and thus did not permit the unilateral filing of increased charges by the utility. On August 23, Cajun filed its protest, a motion to reject LP&L's filing, a petition to suspend effectiveness of that filing for the maximum statutory period and a motion to intervene. Unlike the Cities, however, Cajun did not contest LP&L's right under its wholesale electricity contracts to file a unilateral rate increase. Instead, Cajun alleged that the proposed rate increases violated section 205, in that they were "grossly excessive and unreasonable."

The Commission issued an order on August 26, provisionally accepting for filing LP&L's increased charges,[5] subject to the Commission's ruling, after further analysis

---

the public utility, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the public utility affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of such five months, the proposed change of rate, charge, classification, or service shall go into effect at the end of such period, but in case of a proposed increased rate or charge, the Commission may by order require the interested public utility . . . to keep accurate account in detail of all amounts received by reason of such increase, . . . and upon completion of the hearing and decision may by further order require such public utility . . . to refund, with interest, . . . such portion of such increased rates or charges as by its decision shall be found not justified. . . .

16 U.S.C. § 824d.

**3.** Cajun is an electric generating cooperative organized under the laws of Louisiana. Its membership consists of thirteen electric cooperatives, similarly organized, which provide retail electricity to their own consumer members. Through a combination of various wholesale arrangements, like those with LP&L involved here, and its own limited generating capacity Cajun secures electric power for this distribution network.

**4.** Each of the three Cities has its own contractual arrangement with LP&L. The utility also has rate schedules and underlying contracts with Cajun and three of its member distribution cooperatives. However, the three members have assigned their contracts to Cajun, so we will refer to all of these agreements under that label.

**5.** LP&L had filed alternative rate increases, one including in the rate base all Construction Work in Progress (CWIP), the other including only CWIP related to pollution control equipment and fuel conversion facilities. The Commission provisionally accepted for filing the second, more limited alternative. LP&L urges this as an additional ground for error on appeal. However, given our holding that the utility had no right under its contracts to make *any* unilateral filing pursuant to section 205, whatever the scope of the rate base, we need not reach this issue.

of the contracts for wholesale electricity between the company and the Cities, on the Cities' claim that LP&L lacked the power to change rates unilaterally. The order also suspended the company's rate increases, deferring their implementation for two months, scheduled a hearing, pursuant to section 205(e), on the lawfulness of the proposed changes and granted the Cities' motion to intervene.

On September 30, the Commission issued a second order, rejecting LP&L's section 205 filings pertaining to the Cities and Cajun.[6] Since the company's contracts with the Cities and Cajun all "provided for a change in rate only by order issued by a regulatory authority," the Commission concluded that LP&L had "bargained for and obtained a contractual authorization for a . . . rate proceeding" under section 206(a)[7] of the Act, rather than the right to file unilateral changes under section 205. Accordingly, the Commission ordered an investigation pursuant to section 206 "to determine just and reasonable rates to be charged to Cities [and] Cajun" and granted Cajun's motion to intervene.

On October 19, LP&L applied for a rehearing of the September 30 order; the company outlined the history of its relationship with Cajun and asserted that, because it had made unilateral filings of rate changes on several prior occasions without objection from either Cajun or the Commission, it was "clear that . . . LP&L is not contractually barred from increasing its rates to Cajun pursuant to Section 205."

The Commission issued its final order in this matter on November 21, reaffirming its decision respecting the wholesale electricity contracts between LP&L and the Cities. However, as to Cajun, it noted that the intent of LP&L and Cajun "may not be completely set forth in the context of contract provisions that are not artfully drafted" and voiced its concern that "examination of only the contract provisions may result in dismantling an agreement entered into by the parties." Therefore, "to assure the correctness" of its interpretation of these contracts the Commission announced that it would permit LP&L's section 205 filing with regard to Cajun to become effective, unless Cajun notified the Commission within thirty days that its "interpretation of the contract to preclude a section 205 filing is the intent of the parties." Cajun so notified the Commission on December 13, 1977 and the Commission accordingly voided that portion of its November 21 order which had allowed LP&L's filing to take effect and reinstated the order of September 30 as it pertained to Cajun.

A utility is subject to significantly different procedures under section 205 and 206 of the Act in obtaining increased rates for wholesale electric power. Section 205 allows a company to file a unilateral rate change with the Commission; the increase takes effect by operation of law after thirty days' notice to the Commission and the public unless the Commission intervenes. The Commission may schedule a hearing and suspend the new rate schedules, but may not defer collection of the increased charges, pending the hearing, for longer than five months beyond the date they would otherwise become effective. Moreover, if the Commission intervenes but does not complete its proceedings and issue a decision by the end of the suspension period, the increased rates take effect, subject to refund, when the five months have expired. Thus, section 205 increases do not

---

6. Although Cajun had not challenged LP&L's right to file a unilateral rate increase, the Commission raised the issue on its own motion.

7. Section 206, 16 U.S.C. § 824e, provides in pertinent part that
   (a) Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order.

require any affirmative action by the Commission to become effective and they may be implemented before the Commission reaches a final decision as to their lawfulness. In contrast, increases under section 206 cannot take effect until the Commission has determined, following a hearing, "the just and reasonable ·rate, . . . to be thereafter observed and in force," and those increases are fixed by order of the Commission, rather than taking effect by operation of law.

The Supreme Court has enunciated a clear standard for determining the legality of unilateral rate filings under section 205 of the Act. In *F. P. C. v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1955) and *United Gas Pipe Line Company v. Mobile Gas Service Corporation*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1955), the Court held that a utility may not unilaterally file new rates pursuant to section 205 when the company's agreements with its wholesale customers fix the rates for the contract term. In *United Gas Pipe Line Co. v. Memphis Light, Gas and Water Division*, 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958), the Court emphasized, however, that a utility may expressly reserve the contractual power to make such unilateral changes. Thus, "[t]he rule of Sierra, Mobile and Memphis is refreshingly simple: The contract between the parties governs the legality of the filing. Rate filings consistent with contractual obligations are valid; rate filings inconsistent with contractual obligations are invalid." *Richmond Power & Light v. F.P.C.*, 1973, 156 U.S.App.D.C. 315, 318, 481 F.2d 490, 493, *cert. denied*, 414 U.S. 1068, 94 S.Ct. 578, 38 L.Ed.2d 473 (1973). *See, e. g., Otter Tail Power v. F. P. C.*, 8 Cir., 1976, 536 F.2d 240, 242; *Appalachian Power Co. v. F. P. C.*, 1976, 174 U.S.App.D.C. 100, 104, 529 F.2d 342, 346, *cert. denied*, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76; *Gulf States Utilities Co. v. F. P. C.*, 1975, 171 U.S.App.D.C. 57, 59, 518 F.2d 450, 452.

LP&L's contracts with the Cities each provide that

The terms and conditions of this Agreement and Rate Schedule are subject to amendment or alteration *as a result of and in accordance with a valid applicable order of any governmental authority having jurisdiction hereof.* (emphasis added)

Similarly, under LP&L's agreements with Cajun,

The terms and conditions of the Agreement and Rate Schedule *are subject to approval or acceptance for filing by any governmental regulatory authority hereof and to amendment or alteration as a result of and in accordance with a valid applicable order of any such governmental regulatory authority.* (emphasis added)

LP&L urges that these are *"Memphis"* contracts, expressly granting the company the power to file unilateral rate changes. Relying on the Commission's regulations implementing section 205, the utility contends that the "valid applicable order" mentioned in the agreements simply refers to Commission action taken pursuant to that statute. The regulations state that the "'effective date' of a rate schedule" for purposes of section 205 "shall mean the date on which a rate schedule filed and posted . . . is permitted by the Commission to become effective as a fixed rate schedule. The effective date shall be thirty days after the filing date, or such other date as may be specified by the Commission." 18 C.F.R. § 35.2(e) (1977). LP&L asserts that the "valid applicable order" contemplated by the contracts is the Commission's action permitting the filed rate changes to become effective.

■ This construction is unpersuasive for two reasons. First, if LP&L and its customers in fact agreed that the utility would have the right to file unilateral rate changes, these contracts should have stated as much in unambiguous terms. "We feel the parties would not have left the reservation of an important right such as the making of unilateral rate changes to implication . . . ., but would have clearly provided for such filings if they had been intended." *Public Service Company of New Mexico v. F. P. C.*, 10 Cir., 1977, 557 F.2d 227, 232.

Second, LP&L's characterization of the relevant contract language runs afoul of the Supreme Court's *Mobile* decision. Construing a provision of the Natural Gas Act "substantially identical" to section 205, *F. P. C. v. Sierra Pacific Power Co., supra,* 350 U.S. at 350, 76 S.Ct. at 370, the Court in *Mobile* declared that any rate change pursuant to such a statute is "effected, if at all, not by an order of the Commission but solely by virtue" of a utility's own action. "If the purported change is one the . . company has the power to make, the 'change' is completed upon compliance with the notice requirement and the new rate has the same force as any other rate—it can be set aside only upon being found unlawful by the Commission." *United Gas Pipe Line Company v. Mobile Gas Service Corporation, supra,* 350 U.S. at 342, 76 S.Ct. at 380.

■ LP&L's contracts with the Cities and Cajun are all stated by their terms to be "subject to amendment or alteration as a result of and in accordance with a valid applicable order" of a regulatory authority. The Supreme Court held in *Mobile* and *Sierra* that rate changes under section 205 occur without such an order. Therefore, we agree with the Commission that, in light of the pertinent contract language, the parties "did not contemplate a unilateral filing pursuant to § 205 of the Act" and that "LP&L appears to have bargained for and obtained a contractual authorization for a section 206(a) proceeding with its just and reasonable standard of proof."

In reaching that conclusion, the Commission gave a sensible, practical construction to the contract language in dispute. This interpretation recognizes the likelihood that the parties negotiated a compromise between the *Sierra-Mobile* fixed rate contract, favorable to the customer, and the type of agreement involved in *Memphis,* which allows the utility to take unilateral action to increase charges. Under such an arrangement, a change in rates is not precluded, but "the manner in which such a change may be effected is contractually established," Commission Order, September 30, 1977; contracting for a section 206(a) pro-

ceeding preserves the utility's right to seek new rates, while assuring the customer that any increase requires Commission approval and can only take effect prospectively. The parties to wholesale electric service agreements are free to "extend the protection of the contract to the mechanics of rate change as well as to the permissibility of any change at all," *City of Kaukauna, Wisconsin v. Fed. Energy Reg. Com'n,* 189 U.S. App.D.C. 215, 218, 581 F.2d 993, 996, 1978; *Richmond Power & Light v. F. P. C., supra,* 156 U.S.App.D.C. at 322, 481 F.2d at 497, and in that event "the contract is binding, and a unilateral filing is ineffective to change it." *Richmond Power & Light v. F. P. C., supra,* 156 U.S.App.D.C. at 329, 481 F.2d at 497.

■ LP&L also contends, respecting its contracts with Cajun, that the response of Cajun and the Commission to the company's previous section 205 filings establishes its contractual right to effect the present unilateral rate changes. This argument is unconvincing. In our view, LP&L and Cajun have not modified the terms of their contracts through "their mutual course of dealing," *Sam Rayburn Dam Electric Cooperative v. F. P. C.,* 1975, 169 U.S.App.D.C. 281, 292, 515 F.2d 998, 1009, *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); *see Appalachian Power Co. v. F. P. C., supra,* 174 U.S.App.D.C. at 108 n. 60, 529 F.2d at 350 n. 60. Moreover, even if the Commission had expressly affirmed the legality of LP&L's previous section 205 filings, it would not now be "bound by its earlier error." *Phillips Petroleum v. F. P. C.,* 10 Cir., 1977, 556 F.2d 466, 470.

AFFIRMED.