**PUBLIC SERVICE COMPANY OF NEW MEXICO, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**CITY OF GALLUP, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Public Service Company of New Mexico, Intervenor.

Nos. 78–2007, 79–1275 and 79–1276.

United States Court of Appeals, Tenth Circuit.

Argued May 7, 1980.

Decided Aug. 11, 1980.

Paul H. Keck of Morgan, Lewis & Bockius, Washington, D. C. (Michael F. Healy of Morgan, Lewis & Bockius, Washington, D. C., William B. Keleher and Richard B. Cole of Keleher & McLeod, Albuquerque, N. M., with him on brief), for petitioner-intervenor Public Service Company of New Mexico.

Charles F. Wheatley, Jr. of Wheatley & Wollesen, Washington, D. C. (Woodrow D. Wollesen and Robert A. O'Neil, Washington, D. C., with him on brief), for petitioner City of Gallup.

George H. Williams, Jr., Atty., Federal Energy Regulatory Commission, Washington, D. C. (Robert R. Nordhaus, Gen. Counsel and Jerome Nelson, Sol., Washington, D. C., with him, on brief), for respondent.

Before SETH, Chief Judge, and McKAY and LOGAN, Circuit Judges.

SETH, Chief Judge.

These three cases were consolidated for hearing as each seeks review of orders of the Federal Energy Regulatory Commission. The particulars of each petition will be described in the following sections.

### Case 78–2007

The Public Service Company of New Mexico seeks to review orders of the Federal Energy Regulatory Commission entered in Docket No. E–9454 insofar as they required Public Service Company of New Mexico to file the contract covering its coal purchases from Western Coal Company. The Commission based this portion of its orders of July 5th and December 15th of 1978 on section 35.14(a)(7) of its regulations. The regulations in part read:

> "Where the utility purchases fuel from a company-owned or controlled source, the price of which is subject to the jurisdiction of a regulatory body, such cost shall be deemed to be reasonable and includable in the adjustment clause. . . .
> With respect to the price of fuel purchases from company-owned or controlled sources pursuant to contracts which are not subject to regulatory authority, the utility company shall file such contracts and amendments thereto with the Commission for its acceptance . . . ..
> Any subsequent amendment to such contracts shall likewise be filed with the Commission as a rate schedule change and may be subject to suspension under section 205 of the Federal Power Act." 18 C.F.R. § 35.14(a)(7).

Under related Commission regulations if the contract must be filed, any subsequent changes in it are treated for all practical purposes as rate schedule changes. The contract or a copy was, of course, furnished during the course of the hearing and considered.

Public Service Company of New Mexico urges that the regulation is not applicable so as to require filing under section 35.14

for the reason that there were no facts developed at the hearings as to "control" except that PNM owned 50% of the stock of Western Coal, and in any event the *contract* was subject to the "regulatory authority" of the New Mexico Public Service Commission.

The record does not show that PNM had actual "control" over Western Coal. This issue was not considered during the course of the hearings as a fact issue, and the Administrative Law Judge made no finding on the point. We have held that control is a fact question. *SEC v. International Chem. Dev. Corp.*, 469 F.2d 20 (10th Cir.). As mentioned, all the record shows is that PNM owns 50% of the coal company stock and Tucson Gas and Electric owns the other 50%. There is no basis in the record for the Commission's determination as to control assuming that the issue was properly before it in view of the procedural deficiencies.

■ The regulation relating to filing quoted above (§ 35.14(a)(7)) applies only to contracts "which are not subject to regulatory authority." The record demonstrates that the New Mexico Public Service Commission does not "regulate" Western Coal, but it must pass on the *contract* between Western Coal and PNM to determine whether it is reasonable. This would seem to meet the requirement of the FERC regulations in that it is the "contract" which is referred to, not Western Coal as an entity. When the regulation says "contracts" it clearly means contracts and the matter is not subject to interpretation. *United States v. Ray*, 488 F.2d 15 (10th Cir.).

■ The authority of the New Mexico Public Service Commission under chapter 85 of the laws of 1980 of New Mexico has been clarified with the recent enactment of the following provision:

"The sale, furnishing or delivery of coal, uranium or other fuels by any affiliated interest to a utility for the generation of electricity for the public shall be subject to regulation by the commission but only to the extent necessary to enable the commission to determine that the cost to the utility of such coal, uranium or other

fuels at the point of sale is reasonable . . . ."

We must hold that the determination by the Commission as to "control" had no basis in the record, and that the decision as to whether the coal *contract* was subject to "regulatory authority" was in error. Thus the Commission order insofar as it directs filing of the PNM–Western Coal contract with the Commission under 18 C.F.R. § 35.14(a)(7) is set aside.

### Cases 79–1275 and 79–1276

■ The City of Gallup, New Mexico petitioned to have reviewed in 79–1275 the order of the Federal Energy Regulatory Commission entered in Docket No. ER 78–338, and in 79–1276, the orders entered in Docket No. E–9454. This court in *Public Service Co. of N. M. v. FPC*, 557 F.2d 227 (10th Cir.), reviewed other orders in E–9454. The Public Service Company of New Mexico appears as an intervenor in support of the rate schedule adopted by the Commission.

The orders here concerned approved certain rates to be charged Gallup by PNM. The Commission in considering the new rates concluded that the existing PNM–Gallup contract was not a "fixed rate" contract. Having made this determination the Commission applied the standard for section 206 hearings, 16 U.S.C. § 824e(a), sec. 206(a) of the Act, thus whether the rates are "just and reasonable," rather than the *Sierra* burden for "fixed rate" contracts that is whether the contract rates are so low "as to adversely affect the public interest." *See FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 and related cases.

The City of Gallup urges that the PNM–Gallup contract is a "fixed rate" contract contrary to the position of the Commission. There would seem to be no reason to describe the analysis of the contract used to decide the issue. It is sufficient to point out that the parties agreed in the contract that:

**1270**

"This contract, including the tariff made a part hereof, shall at all times be subject to such changes or modifications as shall be ordered from time to time by any legally constituted regulatory body having jurisdiction to require such changes or modifications." Article XII.

The contract also provided in Article II that should the rates be increased "for any reason whatsoever, other than" reasons not here pertinent, Gallup would have the option to terminate the agreement within 90 days (with provision for continued service for a two-year period under the increased rate).

The City urges that nevertheless the contract was a fixed rate agreement something like the one considered in *FPC v. Sierra Pacific Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388. However, the *Sierra* contract provided only for changes by the California commission, not the then FPC. Here, the provision was much broader. Also, we must agree with the Commission that Article II contemplates other and different changes.

We should again point out that this court in *Public Service Co. of N. M. v. FPC*, 557 F.2d 227 (10th Cir.), in reviewing a previous order in Docket 9454 affirmed the order which recited that the contract did not provide for unilateral filings under section 205, but that changes be made only upon order of the Commission, thus under section 206. The 206 hearings had then been started, and after some problems culminated in the orders under consideration in this appeal. In the cited case we held there was no reservation in Article XII of the contract to permit unilateral changes by rate filings. It was also there stated that the reference to changes by a "regulatory body" "points toward a change after a § 206 proceeding, not a § 205 unilateral filing."

In view of our previous opinion in *Public Service Co. of N. M. v. FPC*, 557 F.2d 227 (10th Cir.), it would not seem necessary to discuss in any detail other cases considering the issue. We should mention, however, *Louisiana Power & Light v. FERC*, 587 F.2d 671 (5th Cir.), where the court held that

contract language "subject to amendment or alteration . . . in accordance with a[n] . . . order of any governmental authority" did not create a fixed rate contract. *See also Southern California Edison Co. v. FPC*, 535 F.2d 1325 (D.C.Cir.).

Thus we must hold that the Commission was correct in its application of the "just and reasonable" standard in the section 206 hearing. The Commission in the application of this measure approved the new rate schedule. This was fully supported by the record and was in large part based on data provided by Gallup. This determination was sufficient to establish the new rates under the Commission's statutory authority and under its regulations. There is no validity to the contention by the City of Gallup that there must be a finding or determination directed to the old schedule. Furthermore, Gallup had a full and complete hearing on all relevant issues during the course of these extended proceedings.

■ As a separate issue Gallup urges that the new rate schedule is so high that it, as a purchaser for resale, cannot compete with PNM for retail customers. This "price squeeze" issue is a matter the FERC should consider where the elements are found to be present. The Supreme Court so held in *FPC v. Conway Corp.*, 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626. The question whether or not this issue was presented was fully considered by the Administrative Law Judge and he concluded that the City made no showing to support a claim of a price squeeze. It is sufficient to point out that there was no evidence of competition at the retail level, and no showing that the rate schedule here considered for the period in which it was to become applicable was higher than PNM retail rates. The claim of Gallup must fail by reason of a failure of proof as to the elements of the doctrine, and a failure to show or even suggest a substantial difference in cost of service for the relevant period. We find no error as Gallup urges in the selection of a "test" year for this point.

We must hold that the Administrative Law Judge's determination and the Com-

mission holding as to the price squeeze contention were correct. The proof did not really raise the issue, and it was incumbent on petitioner to develop the facts to at least show as a basis that there was a substantial difference in cost of service or strong reasons to indicate such a difference.

*Cases 78–2007, 79–1275, 79–1276*

We hold that the Commission orders reviewed in these three cases are valid in all respects except only insofar as the orders of the FERC in Docket No. E–9454 (here Case No. 78–2007) dated July 5, 1978 and December 15, 1978 require Public Service Company of New Mexico to file under its regulations, section 35.14(a)(7), the coal contract between the Public Service Company and Western Coal Company. With this exception the orders are valid and enforceable.