**TEXAS GULF, INC., Petitioner,**

v.

**FEDERAL POWER COMMISSION,
Respondent.**

No. 72–3597.

United States Court of Appeals,
Fifth Circuit.

May 31, 1974.

George W. Hugo, Houston, Tex., John T. Miller, Jr., Washington, D. C., for petitioner.

Leo E. Forquer, Gen. Counsel, George McHenry, Acting Sol., Federal Power Commission, for respondent.

W. DeVier Pierson, Peter J. Levin, Washington, D. C., William B. Cassin, United Gas Pipe Line Co., Houston, Tex., for United Gas Pipe Line.

Before GEWIN, THORNBERRY and COLEMAN, Circuit Judges.

GEWIN, Circuit Judge:

I

In this case, the petitioner, Texas Gulf, Inc. (Texas Gulf), seeks review of a Federal Power Commission order is-

sued on November 22, 1972, granting in part and denying in part a prayer for extraordinary relief from United Gas Pipe Line Company's (United) curtailment plan of services. Texas Gulf operates a sulphur mine, the Bully Camp, in southern Louisiana. It is essential for the mining operation that Texas Gulf have a fuel source for its boilers which are used to heat the sulphur which is exploited at Bully Camp. Accordingly, Texas Gulf contracted with United for the latter to supply it with a fuel source, natural gas.

As a direct result of the natural gas shortage confronting the nation since the beginning of this decade, it has been necessary for natural gas pipeline suppliers to curtail their services. United's situation was not unique in this respect. Thus, on October 26, 1970, United petitioned the Federal Power Commission pursuant to § 4(b) of the Natural Gas Act, 15 U.S.C. § 717c, for a declaratory order holding that its curtailment plan to be initiated on November 1, 1970 complied with its existing contracts and recorded tariffs. After requiring various amendments and adjustments in United's initial petition, the Commission issued an order on July 27, 1971 enforcing United's curtailment plan pending ultimate determination of the plan on its merits.

From the beginning of United's attempts to seek Commission approval of its curtailment program, Texas Gulf, a direct industrial customer of United, has objected strongly to United's plan. It has contended that its allotment under the curtailment plan is unfair.[1] Regardless of whether Texas Gulf is ultimately successful in supporting this contention, that is not the issue which we must now determine. The validity of United's curtailment plan will ultimately receive judicial review upon the orderly termination of the Commission's review of that plan.

After Texas Gulf's initial judicial ventures proved unsuccessful, it filed a claim for extraordinary relief with the Commission on January 5, 1972. It sought an order requiring that United deliver an average of 7,000 Mcf per day and no less than 1,500 Mcf in any one day to its Bully Camp Mine. On January 28, the Commission ordered that United deliver a minimum of 1,500 Mcf per day to the mine to provide for plant safety but denied the prayer for 7,000 Mcf which would have kept the plant fully operational. In granting minimum allotments, the Commission warned Texas Gulf that "efforts should be undertaken by [it] toward making necessary arrangements for the use of an alternate fuel so as to prevent the recurrence of this situation at the mine."

1. On November 10, 1971, Texas Gulf filed a complaint in the United States District Court for the District of Columbia seeking an injunction ordering United not to reduce its gas allotment to Texas Gulf's Bully Camp Mine and other protective relief. Texas Gulf Sulphur Co. v. United Gas Pipe Line Co., No. 2253–71 (D.C.D.C.). Subsequently, on January 4, 1972, the district court dismissed the complaint holding the Commission had jurisdiction over the controversy. On appeal, the D. C. Circuit Court held that the Commission's jurisdiction over curtailment plans was still in doubt and remanded the case to the district court pending the outcome of the curtailment proceedings before the Commission. Sub nom., Monsanto Co. v. FPC, 149 U.S.App.D.C. 396, 463 F.2d 799 (1972). At the time of its decision, the D. C. Circuit did not have the benefit of the Supreme Court decision, FPC v. Louisiana Power & Light Co., 406

U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972), which held that the Commission did have jurisdiction over curtailment proceedings pursuant to § 4(b) of the Natural Gas Act, 15 U.S.C. § 717c(b). On remand, the district court dismissed that part of Texas Gulf's complaint which sought declaratory and injunctive relief and stayed the damages issue claimed by Texas Gulf pending final resolution of United's curtailment plan before the Commission. The propriety of this dismissal and stay was appealed to the D. C. Circuit. Monsanto Co. et al. v. United Gas Pipe Line Co., No. 73–1320 et al. (D.C.Cir., filed March 26, 1973). On January 17, 1974, the D. C. Circuit issued an order affirming the district court's order staying the determination of damages, until a judicial tribunal has reviewed the FPC's holding on the justness and reasonableness of United's plan.

On March 21, 1972, Texas Gulf moved for a rehearing which the Commission granted. An evidentiary hearing was conducted before an administrative law judge on March 27 and 28, 1972. On August 11, 1972, the administrative law judge ordered United to deliver a minimum of 1,500 Mcf per day to Texas Gulf and an average of 5,500 Mcf per day which was apparently imposed so the mine could continue to operate and the miners could retain their jobs. Exceptions were taken to the administrative law judge's determinations and on review the Commission modified his order.

In its November 22nd modifying order, the Commission provided for plant safety at the mine by requiring that a minimum of 1,500 Mcf of gas per day be delivered to Bully Camp. The Commission was disturbed, however, by the fact that in November, 1971 Texas Gulf had commenced to overtake its entitlement to natural gas as an industrial customer under United's curtailment plan. The Commission disapproved fully of Texas Gulf's flaunting of United's curtailment program. In its order the Commission observed:

> Texas Gulf is a direct industrial customer [of United] and as such, is subject to curtailment by United pursuant to plans filed with the Commission. As a practical matter, Texas Gulf stands alone among direct industrial customers in its gross disregard of curtailment allocations. Commencing with the 1971–1972 winter heating season, Texas Gulf has virtually ignored its curtailment allocation.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> . . . [I]n order to prevent irreparable injury to the sulphur mine, we specify that Texas Gulf is to receive not less than 1,500 Mcf per day; to place Texas Gulf on a parity with other United customers, we further specify that Texas Gulf is to receive not more than 1,500 Mcf per day from United until all overtakes are repaid. United shall determine the amount of Texas Gulf's overtake in excess of

those amounts we permitted Texas Gulf in our January 28, 1972, order. Texas Gulf shall pay back that overtake to United by United limiting Texas Gulf to 1,500 Mcf per day until full repayment of the overtake has been made; and then the amount of gas delivered to Texas Gulf shall be 1,500 Mcf per day, or the amount deliverable to Texas Gulf through uniform application of United's curtailment plan, whichever is greater. We reiterate the necessity for compliance with curtailment plans, by the affected pipeline, and by its customers. Disregard of the applicable tariff by one customer causes discrimination against other customers and could result in chaos.

The Commission further required that United install a control device on its supply line to Texas Gulf to prevent any future overtakes. Texas Gulf now seeks review of this last mentioned order.

## II

Texas Gulf presents three principal contentions for our review. First, it asserts that the Commission's order requiring only 1,500 Mcf of natural gas per day for its mining operations amounts to an abandonment of services to Texas Gulf and thus the Commission failed to comply with § 7(b) of the Natural Gas Act, 15 U.S.C. § 717f(b), which requires a full panoply of procedural protections before an abandonment, not evidenced in the proceedings now under review. Secondly, Texas Gulf asseverates that the Commission's order amounts to an undue discrimination in service forbidden by § 4(b) of the Act, 15 U.S.C. § 717c(b). Finally, it seeks constitutional interdiction contending that the order constitutes a confiscation of Texas Gulf's property in violation of the fifth amendment. After a review of the facts found by the Commission as a basis for its order and the applicable legal principles underlying and governing a curtailment proceeding, we find Texas Gulf's contentions to be without merit and ac-

cordingly affirm the Commission order now under review.

 Texas Gulf's characterization of the proceedings below as equivalent to an abandonment is without merit. The Commission did not require discontinuance of service by United. Indeed, the order specifically requires 1,500 Mcf be delivered daily to the Bully Camp Mine to provide for plant safety. All curtailment proceedings may effect in some manner the economic viability of the supplier's customers. Here, the record demonstrates that Texas Gulf was on notice that it had to develop alternative fuel sources if it were to continue to operate the mine on a profit basis. The record supports the Commission's conclusion that Texas Gulf failed to demonstrate that it could not utilize an alternative fuel supply together with the natural gas allotment under United's curtailment program.

Instead, it was content to continue to flaunt the supplier's curtailment program by overtaking its allotment under the curtailment plan. When a curtailment program is instituted, all customers of a similar category necessarily suffer if their supply is diminished. These are trying times in the fuel industry and all must suffer some deprivation. The Commission, aware of its serious responsibilities, has responded appropriately in the instant case.

In contrast to an abandonment of services, the Commission's order guarantees petitioner a fuel source which will prevent the destruction of its Bully Camp facilities. Furthermore, the Supreme Court held in FPC v. Louisiana Power & Light Co., 406 U.S. 621, 92 S. Ct. 1827, 32 L.Ed.2d 369 (1972), that the Commission may review curtailment plans pursuant to § 4(b) of the Act, 15 U.S.C. § 717c(b) instead of the more procedurally cumbersome requirements mandated by an abandonment action.[2] Thus, it is apparent that Texas Gulf's initial contention is without merit.

 The Commission was within its sound discretion as implementor and controller of our national fuel supplies in requiring Texas Gulf to repay its overtakes from its allotment under United's curtailment program. Its findings and subsequent disposition in this regard are fully supported by the record and common sense.[3] Permitting a customer to disregard a supplier's curtailment program would completely destroy compliance with the reduced allotments. The Commission order carefully preserves Texas Gulf's rights under the curtailment program after it has paid back for the overtakes.

 Furthermore, we refuse to entertain Texas Gulf's contention that the curtailment plan amounts to undue discrimination against it in violation of § 4(b) of the Act. Whether this is ultimately determined to be the case, must await that time when a judicial tribunal is requested to review the Commission's ultimate findings of the validity of United's curtailment plan. We refuse the invitation to make a premature review of a complex subject which is not properly before this court.[4]

---

2. The Court stated:
 "Since § 4(b) expressly deals with 'service,' the FPC may invoke it to deal with curtailment programs, whether or not it could also invoke § 7 for that purpose." 406 U.S. at 646.

3. We must affirm the "finding of the Commission as to facts, if supported by substantial evidence . . . ." 15 U.S.C. § 717r(b). See also Permian Basin Area Rate Cases, 390 U.S. 747, 767, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968).

4. The Commission found United's curtailment plan to be fair and equitable with minor exceptions. See United Gas Pipe Line Co., Docket No. RP71–29 et al., Opinion No. 647 (January 12, 1973) 49 FPC 179 (1973). On March 9, 1973, the Commission granted a rehearing of Opinion 647 to reconsider its previous findings. On May 30, 1973, the Commission issued an opinion clarifying and modifying Opinion No. 647. See Opinion No. 647–A, 49 FPC —— (1973). Later the Commission issued an order making certain observations and permitting some parties to intervene in the United curtailment proceeding. See United Gas Pipe Line Co., Docket No. RP71–29 et al., Order Upon Reconsideration of Opinion No. 647–A (July 20, 1973).

■ Finally, we find no merit in the argument that Texas Gulf's property has been seized without just compensation. The Commission order provides for plant safety at the Bully Camp Mine. After Texas Gulf pays back its overtakes, it will be entitled to the same fuel allotment as other customers of its category. Based upon the record before us we are unable to conclude that it has been denied any of its property rights in violation of the Fifth Amendment.

Accordingly, the Federal Power Commission order rendered November 22, 1972 granting in part and denying in part emergency relief to petitioner is affirmed.

Finally, on November 30, 1973, the Commission issued an "Order on Clarification" in the curtailment proceedings of United. As the above Commission actions demonstrate, the resolution of the validity and fairness of United's curtailment plan is no simple matter. When and if a court is called upon to review the ultimate Commission resolution, careful scrutiny will be necessitated, which would be unjudicious at this time. On April 26, 1974, this court heard oral argument by various petitioners concerning the validity of Opinions 647 and 647-A. Louisiana, et al. v. FPC, No. 73-3478.