Billy J. McCOMBS, R. James Stillings, d/b/a Gastill Company, David A. Onsgard, Basin Petroleum Corp., E. I. du Pont de Nemours & Company, and Bill Forney, Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, formerly known as Federal Power Commission, Respondent,

United Gas Pipe Line Company, Intervenor.

No. 75–1829.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 14, 1977.

Decided Nov. 7, 1980.

Opinion vacated March 31, 1983.*

* See 710 F.2d 611.

Stanley L. Cunningham, Oklahoma City, Okl. (Philip D. Hart, Terry R. Barrett, McAfee, Taft, Mark, Bond, Rucks & Woodruff, and McAfee & Taft, Oklahoma City, Okl., on briefs), for petitioners, McCombs Group.

Nicholas W. Fels, Washington, D. C. (Jerome Ackerman, Eric A. Eisen, and Covington & Burling, Washington, D. C., on briefs), for petitioner, du Pont.

John J. Lahey, Washington, D. C. (Drexel D. Journey, Robert W. Perdue, Allan Abbot Tuttle, Thomas M. Walsh, Robert R. Nordhaus, Jerome M. Feit and Joshua J. Rokach, Washington, D. C., on briefs), for respondent.

Knox Bemis, Washington, D. C. (Platt W. Davis III, Barbara S. Blaine, Washington, D. C., J. Evans Atwell, Houston, Tex., Vinson, Elkins, Searls, Connally & Smith, Washington, D. C. and Houston, Tex., William B. Cassin, Larry J. Gunn, Houston, Tex., and W. DeVier Pierson, James M. Costan, Washington, D. C., on briefs), for intervenor.

Before SETH, Chief Judge, and HOLLO-WAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

The McCombs Group and E. I. du Pont de Nemours & Company petitioned for review of orders of the Federal Power Commission, now known as the Federal Energy Regulatory Commission. The Commission ordered the McCombs Group to deliver to the intervenor United Gas Pipe Line Company in interstate commerce natural gas produced from certain leases in Texas. In response to du Pont's motion to dismiss for lack of Commission jurisdiction over du Pont, the Commission ruled it would not address the issue of its jurisdiction. This ruling, as a practical matter, kept du Pont before the Commission.

This Court's first opinion, *McCombs v. Federal Power Commission*, 542 F.2d 1144 (10th Cir. 1976) was vacated. Following rehearing, we again set aside the Commission's orders. *McCombs v. Federal Energy Regulatory Commission*, 570 F.2d 1376 (10th Cir. 1978) (Circuit Judge William J. Holloway, dissenting). The majority there held that the McCombs Group had abandoned *de facto* its interstate service and therefore could not be ordered to resume deliveries to the Pipe Line Company in interstate commerce. We did not reach the other issues raised by the petitioners. The United States Supreme Court unanimously reversed. In *United Gas Pipe Line Co. v. McCombs*, 442 U.S. 529, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1979) the Supreme Court held that the McCombs Group could not, without express prior approval from the Commission, abandon the interstate service rendered under the certificate of public convenience and necessity issued by the Commission to the McCombs Group's predecessors in interest.

The case is before us now on remand from the Supreme Court for consideration of the remaining issues. The material facts relating to those issues are as follows:

In 1953, Bee Quin, as Seller, and the Pipe Line Company, as Buyer, executed a gas purchase contract whereunder the Buyer had rights to purchase the gas produced from wells on the "Butler B" tract, and a portion of the gas produced from any "unitized" lands which included part or all of the Butler B tract.[1] Since such gas was to be resold in interstate commerce, Quin applied to the Commission for certificates of public convenience and necessity authorizing her to provide interstate service. The Commission issued certificates to Quin in 1954, and Quin sold gas for resale in interstate commerce under those certificates. In 1963 the Commission terminated the 1954 certificates and issued a new certificate authorizing Quin's successors in interest to continue the interstate service which Quin had begun.

In 1966 production from the Butler B tract ceased, as, of course, did the deliveries to the Pipe Line Company. However, the 1953 gas purchase contract remained in effect; it would not expire until 1981. The McCombs Group succeeded to the working interest in Butler B. It pooled or unitized Butler B with the neighboring "Butler A" tract, drilled deep, producing wells on both tracts, and contracted to sell the gas to du Pont in intrastate commerce. du Pont purchased the gas for use in its Texas factories. du Pont did not transport or sell the gas in interstate commerce.

The Pipe Line Company discovered that the gas being sold to du Pont was the same as that committed under the 1953 gas purchase contract. In 1973 the Pipe Line Company filed a complaint with the Commission alleging a violation of the Natural Gas Act. Respondents named in the complaint included the McCombs Group and du Pont. Proceedings before an administrative law judge and the Commission led to Commission Opinions No. 740 (54 F.P.C. 755 (1975)), No. 740–A (54 F.P.C. 2034 (1975)), and No. 740–B (55 F.P.C. 202 (1976)). The Commission ruled, *inter alia*, that the McCombs Group violated the Natural Gas Act and

---

1. Two or more tracts overlaying a common field of oil or gas are said to be "pooled" or "unitized" when they are operated as a single producing unit.

must deliver to the Pipe Line Company a portion of the gas produced from wells on Butler A. The Commission reasoned that because the McCombs Group operated Butler A and Butler B as a unit, a portion of the gas produced on Butler A was attributable to fields underlying Butler B and was dedicated to interstate commerce under the 1963 certificate of public convenience and necessity. The Commission ordered the McCombs Group to deliver or "pay back" to the Pipe Line Company volumes of gas equal to those previously delivered to du Pont.

The McCombs Group objected to these rulings in an application for rehearing. It claimed to have dissolved its unitized operation of Butler A and Butler B into the former, separate tracts, and that the dissolution was retroactive in effect. It argued that, because of the retroactive dissolution of the unit, gas produced from Butler A was not and never had been attributable to Butler B nor dedicated to interstate commerce under the 1963 certificate, and that the Pipe Line Company had no right to such gas. The McCombs Group also challenged the Commission's authority to order any "paybacks" of gas to the Pipe Line Company. In addition, the McCombs Group made a specific proposal as to how the dispute should be resolved (which it termed a "settlement" even though the Pipe Line Company withdrew support from the proposal). The McCombs Group demanded that the Commission give prompt consideration to the proposal as an alternative to the Commission's orders.

The Commission ruled that the record was not developed sufficiently to decide whether the McCombs Group's proposal was a reasonable alternative disposition on the merits. The Commission did not respond to the argument that it lacked authority to order paybacks of gas.

The Commission on its own initiative further ruled that, while the Pipe Line Company made no claim that Butler A was dedicated to interstate commerce, nevertheless it was in the public interest to determine whether this might be so. Therefore the Commission divided the proceedings into Phase I for consideration of the possible dedication of Butler A to interstate commerce, and Phase II, for consideration of all other issues including the effect of the McCombs Group's purported dissolution of the Butler A–Butler B unit. The Commission directed the administrative law judge to schedule and decide Phase I on an expedited basis. Common sense dictated that Phase I be decided before Phase II, because, as recognized by the Commission, if both Butler A and Butler B were dedicated to the Pipe Line Company in interstate commerce, the difficult issues raised by the McCombs Group's purported dissolution of the Butler A–Butler B unit were academic.

Even so, the Commission did address the dissolution issues at length without awaiting the decision on Phase I. It ruled it would not recognize the dissolution of the Butler A–Butler B unit for purposes of the Natural Gas Act. Therefore, in the Commission's view, the Pipe Line Company was entitled to all gas attributable to Butler B, whether such gas was produced from wells located on Butler B or wells on Butler A.

Meanwhile du Pont made motions, first before the administrative law judge and then before the Commission, to be dismissed from the proceedings on the ground that it was not subject to Commission jurisdiction. The Commission ruled that it would not decide whether it had jurisdiction over du Pont. The Commission believed that if events took their expected course, the jurisdictional issue could likely be avoided. du Pont again raised the jurisdictional issue in its application for rehearing. The Commission, however, declined to address it. In effect, the Commission kept du Pont in the proceedings without deciding whether it was proper to do so.

The issues on review are (1) whether the Commission has authority to order deliveries of gas produced from wells on Butler A in view of the McCombs Group's purported dissolution of the Butler A–Butler B unit; (2) whether the Commission has authority to order the McCombs Group to pay back to the Pipe Line Company volumes of gas

equivalent to what it delivered to du Pont; (3) whether the Commission was obligated under law to consider the McCombs Group's proposal for resolution of the dispute on the merits when it was first presented to the Commission; and (4) whether du Pont must be dismissed from the proceedings on the ground that it is not subject to Commission jurisdiction.

## I.

All parties except the Commission assumed that before Butler B and Butler A were combined in unitized operation, Butler B was dedicated to the Pipe Line Company in interstate commerce, whereas Butler A was not. During the period of unitized operation, a portion of the gas produced from wells on Butler A was attributable to Butler B, and vice versa. The McCombs Group claims that it has dissolved the unit into the former Butler B and Butler A tracts, and that this dissolution operates retroactively. It argues that the Commission is without authority to order deliveries in interstate commerce of gas produced from wells on Butler A, inasmuch as the gas underlying that tract is not dedicated to interstate commerce.

The Commission, however, refuses to accept the premise of that argument. It suspects that Butler A, like Butler B, was dedicated to the Pipe Line Company in interstate commerce even before the two tracts were unitized. This was the sole matter to be investigated in Phase I. To our knowledge Phase I has not been concluded. However, if it should be determined in Phase I that the regulatory statuses of Butler A and Butler B are and have been the same, then the purported dissolution of the Butler A–Butler B unit will not reduce the quantities of gas which the McCombs Group must deliver to the Pipe Line Company. The issues raised by the argument of the McCombs Group will then prove to be hypothetical. We must, therefore, hold that those issues are not ripe for our review.

A determination of ripeness requires an evaluation of both the fitness of the issues

for judicial decision and the hardship to the parties of withholding court consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). "The question to be asked under the rationale of the *Abbott Laboratories* analysis boils down to whether concrete legal issues are presented by the case in its present posture. Thus the court must ultimately determine whether further agency action would result in a more clearly developed presentation of the relevant issues to the court." *Diversified Chem. & Prop. v. Federal Energy Admin.*, 432 F.Supp. 859, 863 (N.D.Ill.1977). *See also A. O. Smith v. F.T.C.*, 417 F.Supp. 1068, 1082 (D.Del.1976); *Potomac Riv. Ass'n Inc. v. Lundeberg Md. Sea. Sch., Inc.*, 402 F.Supp. 344, 353 (D.Maryland 1975).

We have said that the ripeness doctrine "focuses upon the extent to which the controversy has matured at the time of the litigation"; the rationale of the doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements". *In re Grand Jury, April, 1979*, 604 F.2d 69, 72 (10th Cir. 1979). In *Norvell v. Sangre de Cristo Development Co., Inc.*, 519 F.2d 370, 375 (10th Cir. 1975) we said, "It is fundamental that federal courts do not render advisory opinions and that they are limited to deciding issues in actual cases and controversies.... A justiciable controversy is distinguished from a difference or dispute of a hypothetical character or from one that is academic.... Judicial restraint should be exercised to avoid rendition of an advisory opinion."

Clearly the issues raised by the McCombs Group's first argument fail the test of "fitness for review". They will be ripe for review only when Phase I is concluded. In our view, postponement of our decision of those issues (assuming they will have to be decided at all) will not cause the McCombs Group irreparable hardship. The Commission has ordered the McCombs Group to deliver a certain portion of the gas produced from wells on Butler A to the Pipe Line Company in interstate commerce. The Commission believes that the Pipe Line

Company is entitled to that gas even while accepting, *arguendo*, the McCombs Group's premise that Butler A was not dedicated to interstate commerce prior to unitization with Butler B. If, on later review, we conclude that the Commission erred, the error can then be remedied by reducing the amount of gas which the McCombs Group must deliver from Butler B in the future.[2, 3]

## II.

The Commission ordered the McCombs Group to "pay back" to the Pipe Line Company volumes of gas equal to that which it delivered to du Pont in violation of the Natural Gas Act. The McCombs Group contends that the Commission has no authority to issue payback orders.

The Commission, however, contends that the McCombs Group failed to raise this issue in its application for rehearing before the Commission, and that § 19 of the Natural Gas Act, 15 U.S.C. § 717r, prevents the McCombs Group from presenting the matter to this Court. For that reason, the Commission refuses to discuss the merits of the McCombs Group's argument. The Pipe Line Company concedes that the McCombs Group raised the argument in the application for rehearing to the extent of a general challenge of Commission authority to order

paybacks of gas. However, the Pipe Line Company asserts that the Commission does have such authority.

Section 19 of the Act states, *inter alia*:

> The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. . . . No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. . . . No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do.

We have said that, "[T]he presentation of a ground of objection in an application for rehearing by the Commission is an indispensable prerequisite to the exercise of power of judicial review of the order on such ground." *Pan American Petroleum Corp. v. Federal Power Com'n*, 268 F.2d 827, 830 (10th Cir. 1959). In *Phillips Petroleum Co. v. F.P.C.*, 556 F.2d 466, 471 (10th Cir. 1977), the question was put in terms of whether the application for rehearing was "adequate to put the Commission on notice". In *Rhode Island Consumers' Coun.*,

2. The McCombs Group does not challenge the Commission's authority to enforce the Act by ordering that gas produced from Butler B be delivered to the Pipe Line Company in interstate commerce.

3. In the briefs, the parties did argue the issues relating to the purported dissolution of the Butler A–Butler B unit. However, they did not discuss whether the Seller under the 1953 Quin–Pipe Line Company gas purchase contract had the right to sever Butler B from other tracts in a production unit and to cease deliveries of gas produced on those other tracts. We suggest that this aspect of the case should be directly addressed in any future argument to the Court. In proceedings before the Commission, the Pipe Line Company urged that the interstate service for which the predecessors of the McCombs Group sought authorization by the Commission was the sale of gas pursuant to the 1953 contract, and thus there was offered for dedication in interstate commerce all the gas deliverable to the Pipe Line Company under that contract. The Commission staff took the same position as the Pipe Line Compa-

ny. The certificate of public convenience and necessity does not appear to impose a service obligation greater than that applied for. We question whether a dissolution of the Butler A–Butler B unit consistent with the Seller's obligations under the 1953 contract would amount to a reduction of service under the certificate, for which authority to abandon would be required. In this connection *see Gulf Oil Corp. v. F.P.C.*, 563 F.2d 588, 594 (3d Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978), *cert. dismissed*, 435 U.S. 911, 98 S.Ct. 1462, 55 L.Ed.2d 502 (1978) ("Although our concern is with the meaning of the certificate . . . it is to the Gulf–Texas Eastern contract that we must turn. The reason is that the certificate alone has little substance. At its core is the incorporation by reference of Gulf's application; the application in turn refers to the terms of the precedent agreement and the gas purchase contract. The scope of the certificate, therefore, is in large part defined by the terms of the contract.")

*etc. v. Federal Pow. Com'n*, 504 F.2d 203, 212 (D.C.Cir.1974), the Court stated that the purpose of § 19 "is to insure that the Commission has an opportunity to deal with any difficulties presented by its action before the reviewing court intervenes." In our view, then, an application for rehearing is sufficiently specific if it affords fair notice to the Commission of the objections raised and the arguments to be met.

█ The objection contained in the McCombs Group's application for rehearing, that "The Commission erred in determining it has the power to order makeups in the circumstances of this proceeding", is vague on its face. However, when read in context of the proceedings before the Commission, the objection is not vague. The McCombs Group had previously employed nearly identical language as an argument heading in a brief filed with the Commission. Under that heading the McCombs Group had argued in detail that the Commission lacked authority to order paybacks of gas volumes, both as a general matter and on the specific facts of the case. [R., pp. 995–997]. The application for rehearing referred to those arguments [R., p. 1610], thus putting the Commission on notice that the McCombs Group was challenging the payback orders. Accordingly, we are free to consider whether the Commission was authorized under the Natural Gas Act to order the gas paybacks.

We agree with the McCombs Group that the Commission had no such authority. The Natural Gas Act provides that the Commission can make orders with respect to rates and charges (§§ 4, 5, 15 U.S.C. §§ 717c, 717d), and with respect to rules, regulations, practices and contracts affecting rates and charges (§ 5, 15 U.S.C. § 717d); it can order that transportation facilities be extended (§ 7(a), 15 U.S.C. § 717f(a)); it can authorize both abandonment of service (§ 7(b), 15 U.S.C. § 717f(b)) and new service under a certificate of public convenience and necessity (§ 7(c), 15 U.S.C. § 717f(c)). Section 14 (15 U.S.C. § 717m) permits the Commission to "investigate" matters both to determine whether the Act has been violated and to "aid in the enforcement" of the Act. In connection with the investigative power, the Commission may subpoena witnesses and take evidence (§ 14, 15 U.S.C. § 717m) and hold hearings (§ 15, 15 U.S.C. § 717n). If investigation shows that "any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule, regulation, or order thereunder", the Commission

.... may in its discretion bring an action in the proper district court of the United States, or the United States courts of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices and to enforce compliance with this chapter or any rule, regulation, or order thereunder, and upon a proper showing a permanent or temporary injunction or decree or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices or concerning apparent violations of the Federal antitrust laws to the Attorney General, who, in his discretion, may institute the necessary criminal proceedings.

(§ 20, 15 U.S.C. § 717s).

The Commission, having found that the McCombs Group violated the Act, did not bring an action in district court. Instead, it enforced the Act on its own volition by ordering the McCombs Group to pay back to the Pipe Line Company the volumes of gas which were diverted unlawfully from interstate channels. As noted *supra*, the Commission does not argue the merits with respect to its payback order. However, the Pipe Line Company contends that authority for the payback order can be found in § 16 of the Act (15 U.S.C. § 717*o*), which is entitled "Administration powers of Commission; rules, regulations, and orders". Section 16 states, *inter alia* :

The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend and rescind such orders, rules, and regulations as it may find necessary or appropriate to

carry out the provisions of this chapter. Among other things, such rules and regulations may define accounting, technical, and trade terms used in this chapter; and may prescribe the form or forms of all statements, declarations, applications, and reports to be filed with the Commission, the information which they shall contain, and the time within which they shall be filed.

In our view, § 16 allows the Commission to carry out the specific functions which Congress assigned to it in the Act; § 16 does not create new functions for the Commission.[4] And while the Act does empower the Commission to act as investigator, civil plaintiff and informant to the Attorney General, it does not authorize the Commission to assume the role of a tribunal with power to remedy past violations of the Act, as exercised by the Commission in this case.

Although the Supreme Court on occasion has upheld Commission refund orders, such were sustained as incident to the Commission's power under § 7 to issue certificates of public convenience and necessity on conditions that serve the public interest, *FPC v. Sunray DX Oil Co.*, 391 U.S. 9, 45, 88 S.Ct. 1526, 1544, 20 L.Ed.2d 388 (1968), or because an initial Commission order authorizing higher rates for a gas company was overturned by a reviewing court. *United Gas v. Callery Properties*, 382 U.S. 223, 229, 86 S.Ct. 360, 364, 15 L.Ed.2d 284 (1965). In this case, Commission authority to issue the order must be found in § 16, if at all.

In *Cox v. Federal Energy Regulatory Com'n.*, 581 F.2d 449, 451 (5th Cir. 1978), *United States Steel Corp. v. F.P.C.*, 553 F.2d 1217, 1224 (D.C.Cir.1976), and *Texas Gulf, Inc. v. Federal Power Commission*, 494 F.2d 789, 792 (5th Cir. 1974), Commission orders were upheld requiring companies to pay back volumes of gas on grounds that this "prevents unjust enrichment ... [and is] equitable, reasonable" (*Cox*), is mandated by principles of "common honesty ... [and] simple restitution" (*U. S. Steel*) or is supported by "common sense" (*Texas Gulf*).[5] We respectfully disagree with these opinions. We hold that it is not a function of the Commission to issue orders remedying past violations of the Natural Gas Act.

Of the decisions cited by the Pipe Line Company, the best reasoned, in our view, is *Gulf Oil Corp. v. F. P. C.*, 563 F.2d 588 (3d Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978), *cert. dismissed*, 435 U.S. 911, 98 S.Ct. 1462, 55 L.Ed.2d 502 (1978). The Court there recognized that there are competing views of the Commission's powers under the "necessary and appropriate" clause of § 16. The Court cited *Mesa Petroleum Co. v. Federal Power Commission*, 441 F.2d 182 (5th Cir. 1971) as taking an expansive view of the Commission's powers, while *Mobil Oil Corporation v. Federal Power Commission*, 483 F.2d 1238 (D.C.Cir.1973) was believed to best state the argument for a more limited reading of § 16. The Third Circuit, believing the different interpretations of § 16 stated

---

**4.** As the Court explained in *New England Power Co. v. Federal Power Com'n.*, 467 F.2d 425, 430–431 (D.C.Cir.1972), *aff'd* 415 U.S. 345, 94 S.Ct. 1151, 39 L.Ed.2d 383 (1974):

The Commission asserts for the first time on appeal that it relies upon Section 16 of the Natural Gas Act and Section 309 of the Federal Power Act as authority for Order 427.... Both sections are of an implementary rather than substantive character.... These sections merely augment existing powers conferred upon the agency by Congress, they do not confer independent authority to act.

[Footnotes omitted]. *Accord Mobil Oil Corporation v. Federal Power Commission*, 483 F.2d 1238, 1254–1257 (D.C.Cir.1973); *see also Mur-*

*phy Oil Corp. v. Federal Power Commission*, 431 F.2d 805, 810 (8th Cir. 1970), holding that "[T]he Commission can utilize § 16 authority to effectuate its orders lawfully entered, but § 16 is not an enlargement of the specific authority granted the Commission under §§ 4, 5 and 7 of the Act."

**5.** To say that paybacks were ordered is somewhat misleading with respect to the *U. S. Steel* and *Texas Gulf* cases. The "paybacks" were achieved by reducing gas customers' future allocations under a curtailment plan. The Commission orders were directed to the suppliers of the gas. No gas was actually paid back. *See Hercules, Inc. v. Federal Power Commission*, 552 F.2d 74, 83, n. 46 (3d Cir. 1977).

in the *Mesa* and *Mobil Oil* decisions were "irreconcilable", concluded that *Mesa's* expansive reading of § 16 was the more persuasive. The Commission's refund order was upheld on that basis. We do not believe that § 16 should be read as a wholesale delegation to an executive agency of ill-defined and far–reaching powers. We prefer the D.C. Circuit Court's narrower reading of the Commission's powers under § 16, expressed in *Mobil Oil* and *New England Power Co. v. Federal Power Com'n*, 467 F.2d 425 (D.C.Cir.1972), aff'd 415 U.S. 345, 94 S.Ct. 115, 39 L.Ed.2d 383 (1974).

Thus, we hold that the Commission lacked authority to enter the payback order.[6]

### III.

A few months before the Commission issued its Opinion No. 740, the McCombs Group, then supported by the Pipe Line Company, submitted a settlement proposal for approval by the Commission. The Pipe Line Company withdrew its support of the proposal after the Commission issued Opinion No. 740, but the McCombs Group nevertheless continued to urge the Commission to adopt its proposal as a better resolution on the merits than the Commission's own orders. The Commission, however, declared its orders operative without considering the McCombs Group's proposal. The Commission ruled that certain factual matters were not yet sufficiently developed to permit evaluation of the proposal. The McCombs Group argues that the Commission has delayed so long in the evaluation of its alternative proposal that, even if the Commission eventually approves of that proposal as a better resolution of the proceedings than the Commission's own orders, changed circumstances will make it impossible for the McCombs Group to implement it. The McCombs Group asks this Court to remand the case to the Commission for the purpose of permitting the McCombs Group to submit other proposals to the Commission for its consideration.[7]

In our view this issue is not ripe for review. In a statement to the Court, the Commission represents without contradiction that the administrative law judge has now considered and rejected the McCombs Group's proposal. The Commission has not yet ruled on the administrative law judge's decision. If the Commission affirms the decision, then it will not matter that the Commission failed to consider (and reject) the McCombs Group's proposal earlier. The issue will be moot. If the Commission re-

---

6. The Commission's payback order must be set aside for another reason.

The Commission must disclose the basis of an order so that a reviewing court can determine whether the Commission has acted within the authority granted in the Natural Gas Act. *FPC v. Texaco Inc.*, 417 U.S. 380, 396, 94 S.Ct. 2315, 2325, 41 L.Ed.2d 141 (1974). And a Commission order will be upheld, if at all, only on those grounds invoked therein. *Skelly Oil Co. v. Federal Power Com'n.*, 532 F.2d 177, 180 (10th Cir. 1976); *Gulf Oil Corp. v. F. P. C.*, *supra* at p. 605, n. 20.

In this proceeding the Commission failed to explain the basis for the payback order to an acceptable degree. Urged by its staff to impose the payback order on the basis of the authority supposedly conferred by § 16 of the Act, and confronted with several opposing arguments of the McCombs Group as to why a payback order could not be issued, the Commission issued the order, commented that the Pipe Line Company would thus be "made whole" and left the matter at that. The Commission did not discuss whether the equities of the situation justified a payback order, or whether the Pipe Line Company had waived its contract rights to the payback gas, as the McCombs Group argued. The Commission did not explain from whence came its statutory authority to order paybacks of gas; why the remedy of gas paybacks rather than money refunds was chosen; where the McCombs Group might find the gas to pay back to the Pipe Line Company; and if the gas to be paid back would come from sources not dedicated to interstate commerce, whether this would amount to an excess of jurisdiction by the Commission.

7. We are puzzled by this request. Commission regulations (18 C.F.R. § 1.18(e)) state that, "Nothing contained in this section shall be construed as precluding any party to a proceeding from submitting *at any time* offers of settlement or proposals of adjustment to all parties and to the Commission (or to staff counsel for transmittal to the Commission), or from requesting conferences for such purpose." [Emphasis supplied]. So far as we are aware, nothing prevents the McCombs Group from submitting other proposals to the Commission now.

verses the decision and approves the proposal, and the tardiness of the approval has caused the proposal to "die on the vine" (as the McCombs Group puts it), there may then be an issue ripe for judicial review.[8]

## IV.

In proceedings before the Commission du Pont moved that it be dismissed on the ground that it is not subject to the jurisdiction of the Commission. The Commission decided not to address the merits of du Pont's motion, projecting that future events may render it unnecessary to decide whether its exercise of jurisdiction over du Pont was lawful. du Pont is not now under Commission orders; however, it fears that the Commission may issue orders against it in the future. du Pont has moved this Court for an order dismissing it from the proceedings.

■ We first must decide whether the Commission's ruling not to address du Pont's arguments on jurisdiction should be reviewed by this Court at this time. Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), states that, "Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the circuit court of appeals of the United States ..." In effect the Commission denied du Pont's motion and asserted jurisdiction over that company, holding du Pont captive to the proceedings. Although the Commission did not attempt to state a lawful reason therefor, there nevertheless existed an "order issued by the Commission" within the meaning of the Act.

Administrative proceedings under the Act are likely to be costly to any party. They may consume years, to the detriment of the party's efforts to plan for its business. This case is a good example. du Pont, though it does not produce natural gas, has been un-aided in its concern whether it will be ordered, at an indefinite future time, to procure quantities of natural gas for delivery to the Pipe Line Company. In our view, a party which is not subject to the jurisdiction of the Commission under the Act is entitled to be dismissed at the outset of proceedings. We hold that du Pont was "aggrieved" by the Commission's refusal to grant its motion to dismiss, and may petition for review under the Act.

■ We also hold that the jurisdictional issue is ripe for review under the criteria of *Abbott Laboratories v. Gardner, supra.* It is prudent that this Court decide the issue now. The issue of jurisdiction, or the Commission's power to act with respect to a party, is logically the issue which should be decided initially.[9] In the instant case, the jurisdictional issue turns on questions of law based on uncontested facts.

In *Coca–Cola Company v. F. T. C.*, 475 F.2d 299, 303 (5th Cir. 1973), *cert. denied*, 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973) the Court stated that, "The most widely recognized exception to the general rule against judicial consideration of interlocutory agency rulings is the class of cases where an agency has exercised authority in excess of its jurisdiction or otherwise acted in a manner that is clearly at odds with the specific language of a statute."

The broad considerations involved in judicial review of agency action, and particularly in preenforcement review of the kind sought by plaintiff, is not merely the declaration of the rights of the private litigants but the functioning of the judicial process. In our overall pattern of government the judicial branch has the function of requiring the executive (or administrative) branch to stay within the limits prescribed by the legislative branch.

---

**8.** We hold that the McCombs Group's further contention that it did not receive an impartial hearing before the Commission is without merit for the reasons stated in *McCombs v. FPC*, No. 74–1598 (10th Cir. February 13, 1975).

**9.** The Commission's apparent view that the jurisdiction issue is somehow "avoided" if the Commission eventually decides not to take action against a party is mistaken. Here, jurisdiction was an issue from the day du Pont challenged its being made a respondent in Commission proceedings.

*National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 695 (D.C. Cir.1971).

The Pipe Line Company further argues that the rule of "primary jurisdiction" dictates that "the agency should be permitted in the first instance to make a determination of its jurisdiction." The rule does not apply here, nor do the rules laid down in *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621 (1972) and *Myers v. Bethlehem Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), decisions relied upon by the Pipe Line Company. Those decisions hold that a court may not enjoin ongoing administrative proceedings on the ground that the agency lacks jurisdiction; instead, a court is directed to allow administrative remedies to be exhausted. In the instant case, du Pont advanced its argument on jurisdiction to the administrative law judge and to the Commission, and raised it again in an application for rehearing. Thus, the Commission had ample opportunity to address the merits of the argument but failed to do so. Under the Natural Gas Act, the jurisdictional issue is properly before this Court for review.

■ Turning now to the merits of du Pont's argument, we hold that the provisions of the Natural Gas Act do not apply to du Pont, and that the Commission may not exercise jurisdiction over du Pont. du Pont purchased gas from the McCombs Group for use in its Texas factories. du Pont does not transport gas in interstate commerce, nor does it sell gas in interstate commerce for resale. Therefore du Pont is not a "natural gas company" within the meaning of § 1(b) of the Act (15 U.S.C. § 717(b)) and is not subject to the provisions of the Act. We find nothing in the Act which authorizes the Commission to assert jurisdiction over du Pont.

*California v. Southland Royalty Co.*, 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978), cited by the Pipe Line Company, does not apply here. In that case a lessor of gas fields allowed its lessee, a natural gas company, to dedicate the gas to interstate commerce. After the lease expired, the lessor sought to divert the gas from the interstate market and to sell it in the intrastate market. The Court held that the lessor could not do so, absent permission from the Commission to abandon the interstate service pursuant to § 7(b) of the Act (15 U.S.C. § 717f(b)). Since § 7(b) applies only to "natural gas companies", the Court must have concluded that the lessor became a natural gas company when the lease expired and the lessor was placed in a position to continue the interstate service formerly rendered by the lessee. We do not believe that *Southland Royalty* extends to the point of making a "natural gas company" of one like du Pont, which purchased volumes of gas for its own use.

Ordering paragraph B of the Commission's Opinion No. 740 as modified by Opinion No. 740–A and Opinion No. 740–B is set aside. The matter is remanded to the Commission with directions to dismiss du Pont from the proceedings, and for further proceedings consistent with this opinion.

SO ORDERED.

HOLLOWAY, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding that there is no reviewable issue as to the McCombs Group's settlement proposal. However, I respectfully dissent from the majority's other holdings.

I

I would hold that there is an issue ripe for review as to whether the Commission properly refused to recognize the dissolution of the Butler A and B units for purposes of the Natural Gas Act and properly ordered deliveries of gas from wells on the Butler A tracts. I would hold that these determinations by the Commission had a proper factual and legal basis and should be sustained.

It is true that in Opinion No. 740–A the Commission did divide the case into two phases and provide that in Phase I that it would consider the staff's argument that gas from the Butler A tract was itself dedi-

cated to interstate commerce under the 1953 gas purchase contract. (J.A. 242). The record before us does not indicate that this issue has been adjudicated by the Administrative Law Judge or the Commission. It is also true that if the staff's argument is upheld, the issues as to the unitization of the tracts and the subsequent attempt at dissolution will be rendered moot. However, without awaiting the resolution of Phase I, the Commission entered a definitive order requiring the McCombs Group to deliver part of the Butler A gas to United on the ground that the dissolution of the Butler A and B units should not be recognized for purposes of the Natural Gas Act. (*Id.* at 239, 248). The impact of the Commission's order on the McCombs Group in this respect "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681.

Reaching the merits of the issue, I would uphold the Commission's ruling that the attempted dissolution should not be recognized for purposes of the Natural Gas Act, due to the failure to obtain abandonment authority under § 7(b) of the Act. The Commission found that Mr. Forney's testimony demonstrates that dedicated gas reserves would be withdrawn from interstate commerce; and Opinion No. 740–B says that as a result, the record makes a prima facie showing that an abandonment application is a necessary prerequisite for recognition of the attempted dissolution for the purpose of the Natural Gas Act. (J.A. 258–59). This finding on withdrawal of gas is not shown to be in error. In these circumstances I believe the Commission's ruling not to recognize the dissolution for purposes of the Act was proper under abandonment principles developed under § 7(b).

The certificates authorized sales under the gas purchase contract which itself says it covers " 'merchantable natural gas . . .

produced from all wells now or hereafter drilled during the [10 year] term of this contract' on the specified leaseholds, including the Butler B tract, '*and Seller's proportionate part of all merchantable natural gas produced from any well or wells located on any unit or units which include any part of said lands and leaseholds. . . .*'" (*Id.* at 160). (Emphasis added). The Commission concluded that the G–12694 certificate "covers all of the gas which has been *produced from or attributable to the Butler B lease* since gas was rediscovered at deeper depths late in 1971." (*Id.* at 161) (emphasis added).

It is true that there was no gas delivered from the Butler A or B acreage to United during the period of unitization and before the dissolution.[1] However, the earlier deliveries until 1966 and the acceptance of the Commission's certificates effected the dedication of all gas attributable to the Butler B leasehold. "The initiation of interstate service pursuant to the certificate dedicated all fields subject to that certificate." *California v. Southland Royalty Co.*, 436 U.S. 519, 525, 98 S.Ct. 1955, 1959, 56 L.Ed.2d 505. I would agree with the Commission's interpretation that the dedication includes the portion of the gas produced from or attributable to the Butler B lease (J.A. 161); and I would agree that the dedication thus covers production from the McCombs–Butler Units Nos. 1 and 2, created later, which is attributable to the Butler B leasehold as computed in the Commission's order. (*Id.* at 165–66). These interests were dedicated to interstate service and "once so dedicated there can be no withdrawal of that supply from continued interstate movement without Commission approval." *United Gas Pipe Line Co. v. McCombs*, 442 U.S. 529, 542, 99 S.Ct. 2461, 2469, 61 L.Ed.2d 54; *Southland, supra*, 436 U.S. at 524, 98 S.Ct. at 1958; *Sunray Mid–Continent Oil Co. v. FPC*, 364 U.S. 137, 156, 80 S.Ct. 1392, 1403, 4 L.Ed.2d 1623; *Atlantic Refining Co. v.*

---

1. The McCombs–Butler Units Nos. 1 and 2 were created respectively on November 5, 1971, effective November 1, 1971, and on or about April 1, 1972. (J.A. 138). The dissolution instrument, stating that the dissolution of the units was retroactive to the dates of creation of the units (Brief of McCombs Group filed February 13, 1976 at 38), was recorded on October 21, 1974. (J.A. 237).

*Public Service Commission,* 360 U.S. 378, 389, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312. The Supreme Court's interpretation of § 7(b) adequately supports the Commission's ruling that in view of the evidence indicating that the dissolution would result in a net withdrawal of gas reserves from interstate commerce, such dissolution could not be recognized for purposes of the Act, absent Commission approval as an abandonment.[2]

There remains the argument of the McCombs Group that the matter of unitization and dissolution falls within the production and gathering exemption of § 1(b) of the Act. I find this argument is untenable however since "the 'production or gathering' exemption relates to the physical activities, processes and facilities of production or gathering, but not to sales of the kind affirmatively subjected to Commission jurisdiction." *United Gas Improvement Co. v. Continental Oil Co.,* 381 U.S. 392, 402, 85 S.Ct. 1517, 1523, 14 L.Ed.2d 466; *see Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 678, 74 S.Ct. 794, 796, 98 L.Ed. 1035.

Thus, I would sustain the Commission's ruling on the dissolution issue.

## II

I would hold that the authority conferred on the Commission by §§ 7(b) and 16 of the Act empowers it to order paybacks of gas improperly diverted from interstate commerce. However, I would hold that, under the circumstances of this case, the Commission's order is unjustified to the extent that it requires payback of volumes of gas improperly diverted from United prior to United's June 6, 1973, demand to the McCombs Group for such gas.

Having found that the intrastate sales, which commenced in 1972, to du Pont were an unlawful diversion of gas from interstate commerce, the Commission had to determine the proper remedy. It could surely order that future unlawful sales cease and that gas be delivered to United under the gas purchase contract and the Commission's certificate pursuant to the requirement of § 7(b) that "[n]o natural–gas company shall abandon any service rendered by means of such facilities, without the permission of the Commission first had and obtained . . . ." Likewise, I feel that it was within the Commission's proper discretion to order that the McCombs Group restore past unlawful diversions by a payback order, but only to the limited extent discussed below.

The Commission is the agency entrusted with the administration of the Act. *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 617, 64 S.Ct. 281, 294, 88 L.Ed. 333. Broad authority to carry out the Act is conferred on the Commission by § 16 which says in part that

The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter. . . .

I find persuasive here the cases which have upheld other remedial orders of the Commission. *See Cox v. FERC,* 581 F.2d 449 (5th Cir.); *see also FPC v. Tennessee Gas Transmission Co.,* 371 U.S. 145, 155, 83 S.Ct. 211, 216, 9 L.Ed.2d 199, *Gulf Oil Corp. v. FPC,* 563 F.2d 588, 606–608 (3d Cir.), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762, *cert. dismissed,* 435 U.S. 911, 98 S.Ct. 1462, 55 L.Ed.2d 402, *Texas Gulf, Inc. v. FPC,* 494 F.2d 789, 792 (5th Cir.); *Mesa Petroleum Co. v. FPC,* 441 F.2d 182,

---

**2.** The McCombs Group claims that there was no effective dedication of the production on Butler A attributable to Butler B under the unitization because unitization would never have occurred had United's rights or the 1953 gas purchase contract been known to the McCombs Group. The Commission's opinion in *Louisiana–Nevada Transit Co.,* Dkt. No. RP 76–31 (October 31, 1978), is cited for the proposition that unintentional acts do not suffice to subject a producer to Commission jurisdiction.

However, that case involved gas flowing through a pipeline from Arkansas to Louisiana by sheer accident. The physical flow itself was unintended. Here, on the other hand, unitization was a deliberate act. To the extent that intent is required under the Act, all that is needed is some sort of purposeful activity. The fact that one does not intend to be subjected to Commission jurisdiction is irrelevant. *See Southland, supra,* 436 U.S. at 524, 98 S.Ct. at 1958.

**1190**

186–89 (5th Cir.). Commission orders both to cease unlawful diversions and to restore unlawfully diverted quantities of gas are logical remedies to carry out the important provisions of § 7(b). Such orders place violators of § 7(b) in the same position in which they would have been had they complied with the statute all along. The narrower reading of § 16 in *Mobile Oil Corp. v. FPC*, 483 F.2d 1238, 1256–57 (D.C.Cir.), should not be applied here to overturn a direct, logical remedy for diversions from interstate commerce in contravention of the protective prohibitions of § 7(b). The payback remedy was designed to implement those prohibitions and to reverse the effect of violation of them.[3]

Since I would hold that the Commission has discretion under the Act to order paybacks of gas, there is the further question whether the Commission's order requiring the payback for all the diversions since execution of the July 1, 1972, du Pont–McCombs Group contract was proper or an abuse of discretion.[4] On the facts found by the Commission which bear on this issue (*see* J.A. 139–41, 168–69), it seems clear that there was uncertainty among all the parties about the possible rights of United and the possible dedication of the gas to interstate commerce. Not until June 6, 1973, did United assert its claim under the 1953 gas purchase contract to the McCombs Group, and United did not file its complaint with the Commission in this proceeding un-

til October 9, 1973. (J.A. 140–41). In these circumstances it seems to me that the equities clearly did not justify an order to restore gas diverted by the McCombs Group before the June 6, 1973, demand by United to the McCombs Group for the gas. To that extent the order should be modified for an abuse of discretion. *See Gulf Oil Corp. v. FPC*, 563 F.2d 588, 608 (3d Cir.), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762, *cert. dismissed*, 435 U.S. 911, 98 S.Ct. 1462, 55 L.Ed.2d 502.

In sum, I would modify the Commission's payback order to limit the payback requirement to the amount of gas delivered from the specified units after June 6, 1973. As thus modified I would uphold the payback order as a proper exercise of the Commission's authority to implement the Act.

III

Although my reasoning is somewhat different, I agree with the majority's conclusion that as to the McCombs Group's settlement proposal, we have no issue which is ripe for review.

The supplemental brief on remand filed by the McCombs Group advises us that "[t]he Commission's errors in this matter have indeed caused the settlement to die on the vine, and there is little hope of resurrecting it in its present form." (Supplemental Brief of McCombs Group filed July

---

**3.** Furthermore, I would reject the McCombs Group's argument that the Natural Gas Policy Act (NGPA), 15 U.S.C. §§ 3301 *et seq.*, when read with the legislative history, precludes the Commission from issuing a payback order. This issue was not reached in the majority opinion since it held that the payback order was unauthorized by the Natural Gas Act itself. The NGPA gives limited relief from the Supreme Court's decision in *California v. Southland Royalty Co.*, 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505, *inter alia*. NGPA §§ 2(18)(B)(iii), 601(a)(1)(A), 15 U.S.C. §§ 3301(18)(B)(iii), 3431(a)(1)(A). However, nothing in the NGPA itself applies to the facts of this case, which does not involve the *Southland* doctrine. Petitioners rely on remarks made by Congressman Dingell on the floor of the House concerning this legislation, payback orders, and enforcement policies of the Commission, *inter alia*. To me, the remarks are not

shown to have any bearing on this case by any connection with an application of the NGPA to the facts of the instant controversy. For this reason I cannot agree that the comments relied on are persuasive in this case.

**4.** The McCombs Group argues that the Commission's orders are in error because of failure of the Commission to consider the equities. Although the Commission did not explicitly discuss the equitable considerations, it did recognize the fact that waiver, estoppel and laches on the part of United were alleged by the McCombs Group and du Pont. (J.A. 148). This statement, together with the Commission's findings about the conduct of the parties as the controversy developed (*see* J.A. 139–41, 168–69), indicates that the Commission considered and implicitly rejected these contentions.

15, 1980, at 3–4). The brief concludes that this court "should correct the Commission's error in failing to consider the settlement proposal by remanding to the Commission for the purpose of permitting the McCombs Group to submit whatever other settlement proposal it may wish to make, and for consideration thereof by the Commission. All of these issues should be considered in the light of the Court's decision on the dissolution issue." (*Id.* at 15).

The issue earlier raised about the former settlement proposal is thus implicitly conceded by the McCombs Group to be moot since that proposal "died on the vine." Apparently the Commission has not ruled on the ALJ's rejection of the McCombs proposal. In those proceedings before the Commission, or in the proceedings which will follow there in winding up the case after our decision, the McCombs Group or any other party can make new settlement proposals since the Commission's rules permit the submission of proposals by participants at any time. 18 CFR § 1.18(e)(1)(ii).

Thus I agree that there is no issue before us which is appropriate for review concerning the settlement issue.

## IV

I am unable to agree that there is a reviewable order within the meaning of § 19(b) of the Act with respect to du Pont's motion to dismiss. I feel, however, that in remanding we should direct that the Commission promptly rule on the motion to dismiss under our authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

I cannot agree with the majority opinion's holding that the Commission in effect denied du Pont's motion and asserted jurisdiction over the company. The difficulties and unreasonableness of delay do not make a ruling out of inaction and deferral of a decision on du Pont's motion. Opinion No. 740 expressly says that the Commission will

defer ruling on the motion, that du Pont need not be subjected to any Commission directive "unless and until" the McCombs Group refuses or fails to make United whole for its Butler B gas entitlements, and that "[w]hen that becomes an accomplished fact we can grant du Pont's motion without deciding whether it has become a 'natural gas company.'" (J.A. 168).

The handwriting may seem to be on the wall as to the potential liability of du Pont in the event of a payback default by the McCombs Group, but there is no actual definitive order making du Pont an aggrieved party entitled to review under § 19(b) of the Natural Gas Act. *See FPC v. Metropolitan Edison Co.*, 304 U.S. 375, 383–84, 58 S.Ct. 963, 966–67, 82 L.Ed. 1408. The Commission's opinions explicitly leave open the issue of jurisdiction over du Pont. The company is not ordered to make any payback or to take any other action, nor do the opinions definitively rule that du Pont will be held liable as a "natural gas company," if the McCombs Group does not fulfill its payback obligations. The orders do not have a sufficiently direct and immediate impact on du Pont or require an immediate and significant change in the conduct of its affairs as in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152–53, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681, so as to justify review at this stage. *See also Amerada Petroleum Corp. v. FPC*, 285 F.2d 737, 739 (10th Cir.).[5]

Moreover, the potential of exercise of Commission jurisdiction over du Pont pictured by the opinions is subject to change by the later ruling which Opinion No. 740 refers to. (J.A. 168). Thus the orders do not meet the requirement for reviewability of having a "substantial effect on the parties which cannot be altered by subsequent administrative action." *Public Service Company of New Mexico v. FPC*, 557 F.2d 227, 233 (10th Cir.). There is no definitive order with an impact of such a nature that it will cause irreparable injury if not re-

---

5. This case does not involve the threat of denial of due process rights by being subjected to an allegedly unconstitutional procedure as in *Phillips Petroleum Co. v. FPC*, 475 F.2d 842, 847–48

(10th Cir.), where an order rejecting a challenge to rule making procedure to set rates was held reviewable before any rates were actually set under the rule.

## 1192

viewed now. du Pont is thus not an "aggrieved" party within the meaning of § 19(b) under the present orders of the Commission, entitled to review by us now on the issue of jurisdiction. *Public Service Co. of New Mexico v. FPC, supra,* 557 F.2d at 233.

As mentioned, I feel that the record does warrant other relief based on the showing of agency delay and inaction on the du Pont motion. 5 U.S.C. § 556(b) requires administrative agencies to decide issues presented within a reasonable time. Here du Pont's motion to dismiss was filed on November 9, 1973, with its answer to the complaint, and the motion was renewed on May 3, 1974. The Commission has failed to decide the challenge to jurisdiction over du Pont from the initial decision on other issues by the ALJ in April 1974 through Opinion No. 740–B on January 19, 1976. du Pont has been embroiled in this lengthy litigation and is under the cloud of potential liability, without there having been a determination at the Commission level that there is a lawful basis for exercise of Commission jurisdiction over the company.

In these circumstances we may compel agency action unreasonably delayed. *See* 5 U.S.C. § 706(1); *Nader v. FCC,* 520 F.2d 182, 206–07 (D.C.Cir.). I feel we should remand with directions that du Pont's motion to dismiss and challenge to jurisdiction be considered and disposed of promptly by the Commission, without awaiting further developments and proceedings as indicated by Opinion No. 740. (J.A. 168).